William H. Kern's Estate.　Appeal of Hood Gilpin and The Fidelity Insurance, Trust and Safe Deposit Company, Trustees of William H. Kern, Deceased.

*Decedents' estates—Promissory notes—Collateral security—Gift.*

Where a grandfather makes a gift of stock to his granddaughter, and subsequently procures from her a promissory note, to be negotiated for his use, giving to her as security his own note for the same amount as her note, and the granddaughter is forced to pay her note, selling her stock for that purpose, she is entitled after her grandfather's death to recover the amount of his note from his estate.

*Promissory notes—Consideration—Gift—" Natural love and affection."*

Natural love and affection are not a sufficient consideration to sustain a promissory note.

*Gift—Promissory note—Revocation.*

The delivery of a promissory note or check is not an executed gift of the money, but remains revocable, and will be revoked by the death of the promisor before actual payment.

Argued March 29, 1895.   Appeal, No. 288, Jan. T., 1895, by Hood Gilpin and The Fidelity Insurance, Trust and Safe Deposit Company, trustees of William H. Kern, deceased, from decree of O. C. Phila. Co., April T., 1893, No. 248, sustaining exceptions to adjudication.   Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.   Reversed.

Exceptions to adjudication.

The facts appear by the following opinion of HANNA, P. J.

The first of the exceptions to be considered to the conclusions reached by the auditing judge are those to the award to Mabel Ella Kern of the claim presented by her to recover as payee upon a promissory note signed by testator for $10,000, and in connection therewith those filed on her behalf to the findings of fact relative to the said claim.

[After a careful re-examination of the testimony, the auditing judge willingly admits that the facts connected with the delivery of the note by testator to the claimant were not clearly apprehended by him, and are not stated with sufficient accuracy and precision.   From this re-examination, the facts appear to be as follows : The note upon which it is sought to recover is dated July 19, 1892, signed by testator and payable on demand to the order of the claimant.   The signature of testator being proved and the note offered in evidence, she was prima facie entitled to recover.   Nor was she bound to prove consideration, as this is to be presumed : Walton's Est., 4 Kulp, 487 ; Conmey v. Macfarlane, 97 Pa. 361.

But the proof offered on the part of other creditors and the accountant, in their attempt to show a want of consideration, actually proved by uncontradicted testimony that which, after further reflection and a more careful consideration on the subject, must be held to be a valuable consideration given by claimant for the note.] [8]

The testator was her grandfather, and entertained for her and a younger sister the kindest regard and sincerest affection, and frequently declared his desire and intention to provide for them out of his estate.   His reputation was that of a man of large means, and no doubt he believed he was possessed of a handsome competency.   Prior to March, 1892, testator expressed an intention to make a gift to his granddaughter, the

claimant, of some shares of stock of the American Coal Company of which he was the owner. About that time he obtained a loan of $10,000 from a bank in New York by the discount of his promissory note for this amount, and deposited with the bank as collateral security one thousand shares of the stock mentioned. In July, 1892, testator recognizing the fact that he had parted with the control of the shares of stock he intended to present to his granddaughter, and also of the probable sale of the stock by the bank in case of his failure to pay his note, at the suggestion of his son, claimant's father, he made his promissory note in favor of his granddaughter, dated July 19, 1892, for $10,000, and gave the same to his son for delivery to his daughter. When testator's promissory note held by the bank became due and payable, he procured its renewal with the bank, who continued to hold the shares of stock as collateral. In November, 1892, the renewal note matured and was paid by him. The note for $10,000 he had given for the benefit of his granddaughter was returned to him, and the shares of stock pledged to the bank in New York he then presented to her as a gift. But it seems he did not destroy his promissory note, but retained it in his possession. At this time testator was a debtor to the bank of which he was president, upon his promissory note ; but it became necessary to substitute some other evidence of his indebtedness. He accordingly obtained from his granddaughter either her due bill or promissory note for $10,000, and delivered to her his beforementioned promissory note for $10,000, which he had retained and not destroyed, as stated. But she returned to him his promissory note. As it appears, testator then obtained from the bank his promissory note and substituted therefor his granddaughter's promissory note or due bill accompanied by his own note for $10,000, which she had returned to him as a collateral security. This was in November, 1892. Testator died before the debt to the bank became payable. And in May, 1893, after his death, his granddaughter paid her note or due bill held by the bank with her own money; and the bank, in the ordinary course of business, returned to her her due bill or note, together with the testator's promissory note which she now claims upon.

These appear to be the main facts connected with the incep-

tion of the promissory note, and the payment by claimant of her own due bill or note given by her to testator in exchange therefor.

The transaction therefore was simply this: Claimant loaned testator her note or due bill as a security for his private debt. Instead of testator paying his debt, she was obliged to pay it and thus becomes his creditor and entitled to recover the amount of the promissory note he delivered to her as security therefor, with interest from November 25, 1892, the date of its maturity, and that she paid a valuable consideration for the note cannot well be doubted. The award to her in this respect is accordingly corrected.

But claimant presented an additional claim to recover the amount of a promissory note for $30,000, delivered to her by testator as a gift for herself and sister, but which was rejected upon the ground that she failed to prove a valuable consideration for the gift. It was expressly found, however, as a fact, that the consideration for the note was a good consideration, viz, natural love and affection. But this was deemed insufficient to sustain the claim. The auditing judge has given the question careful reflection, and is now inclined to the opinion he was in error in his former conclusion. The gift by testator of his own promissory note to his granddaughter was, it is true, an executory contract. But it was actually delivered by him to her. He declared at the same time the purpose of the gift was to provide for the future comfort and maintenance of herself and sister. While it has been held in numerous instances, both in England and in this country, and is stated by TRUNKEY, J., in Conmey v. Macfarlane, supra, that a simple contract, oral or written, without consideration is void, and no action can be maintained· upon it, " the law requires that the consideration should be valuable to support an action to enforce an executory contract, but some loss or inconvenience to the promisee upon his entering into the contract, or some benefit to the promisor is deemed a valuable consideration; " yet we find that, as in the case of a grant by deed, " a consideration may be either a good or a valuable one. A good consideration is such as that of blood, or of natural love and affection, when a man grants an estate to a near relative, being founded on motives of generosity and natural duty. A valuable consideration is such as

money, marriage or the like, which the law esteems an equivalent given for the grant, and is, therefore, founded in motives of justice. Deeds made upon good consideration only are considered as merely voluntary, and are frequently set aside in favor of creditors and bona fide purchasers." 2 Sharswood's Blackstone, *297. And so with an executory contract which is an agreement upon sufficient consideration. It may be founded upon either a good or valuable consideration. If founded upon a good consideration it may, " however, be set aside, and the contract become void when it tends in its consequences to defraud creditors or other third persons of their just rights." Id. *444. And, as stated in the note by Judge SHARSWOOD, a voluntary bond under seal which imports consideration is both in law and in equity a gift of money, and must be postponed until creditors are paid ; it is fraudulent and void as to them, but it is always good against the party himself and against heirs, legatees and others who stand in no higher equity. Citing Sherk v. Endress, 3 W. & S. 255 ; Candor and Henderson's Appeal, 27 Pa. 119. A bond payable at the donor's death, if delivered to the donee, is an executed gift and irrevocable : Hershey's Estate, 5 L. Bar. 1873. And a gift by a parent to her children of her sealed notes, payable at her death, is a present gift inter vivos, and irrevocable : Mack's Appeal, 68 Pa. 231.

It seems, therefore, to be well settled that a gift inter vivos of a sealed executory contract for the payment of money will be enforced in this state without a valuable consideration therefor.

If this be so, there is no good reason why a similar contract but not under seal, for a good consideration, should not be held equally valid as between the original parties and those claiming under them, subject only to the rights of creditors and others holding a higher right than mere volunteers.

In Cowen's Estate, 3 Pitts. 471, it is held that a promissory note without other than a moral consideration is inoperative as a gift as against subsequent creditors, though the donor was solvent at the time. And in Ross's Appeal, 127 Pa. 4, a father executed a note under seal, payable to a trustee for his children five years after date. After his death it was held that the transaction was a duly executed gift inter vivos, and there

being no evidence of fraud it was not in fraud of the rights of the second wife. And while the seal imports a consideration, there was shown "a good consideration in the natural affection of a father for his children and his obligation to provide for them." Upon re-examination of the case of Walsh v. Kennedy, 9 Phila. 178, s. c., 2 W. N. C. 437, it appears that the note sued upon was intended as a gift by decedent to the plaintiff, but it was never delivered to him prior to decedent's death; that plaintiff was a former employee of decedent, was overpaid his salary, and there was no consideration for the note. The plaintiff was nonsuited in the court below, and it was held by the Supreme Court that "the note of $5,000 was intended merely as a gift, and not the evidence of a debt, and was not delivered so as to take effect as a debt or gift." But it was not decided that if the note had been delivered by the decedent in his lifetime to the plaintiff he would not be entitled to recover.

In the present case, as already stated, the promissory note was delivered to the claimant by testator and for a good consideration, namely, the natural love and affection of a grandfather for his granddaughter. But as it was a voluntary gift, while we are of opinion the claimant is entitled to recover, yet she should be postponed until after the payment of the claims of creditors, and no award of payment thereof will at present be made, nor until after the payment of the claims of creditors of testator existing at the date of said note, namely, December 27, 1892.

*Errors assigned* were (1–5) in sustaining exceptions to adjudications; (6) in awarding Mabel Ella Kern $30,000 with interest; (7) in awarding Mabel Ella Kern $10,000 with interest; (8) portion of opinion as above, quoting it.

*John G. Johnson, Bernard Gilpin* with him, for appellants. —The award of payment of the promissory note for $30,000, under the conceded facts, was in violation of every decided case: Conmey v. MacFarlane, 97 Pa. 361; 2 Blackstone, 444; Kennedy v. Ware, 1 Pa. 445; Carhart's App., 78 Pa. 100; Trough's Est., 75 Pa. 115.

*Arthur Biddle, N. D. Miller*, and *Biddle & Ward* with him, for appellee.—There is a sufficient moral obligation to pay the note.

If a party is under a moral obligation which no court of law or equity can enforce, the honesty and rectitude of the thing are the consideration : Seton v. Seton, Brown C. C. 610 ; Ellis v. Ninmo, Lloyd & G. 333 ; Bowers v. Hurd, 10 Mass. 427 ; Ross's App., 127 Pa. 4.

OPINION BY MR. JUSTICE MITCHELL, October 7, 1895 :

With regard to the $10,000 note, though the circumstances are somewhat confused, and the testimony would have supported a finding that Mr. Kern intended the delivery of the Coal Company stock as well as of the note to his granddaughter, as security for her note, discounted in his favor, yet it is also consistent with the view taken by the learned judge below, and we cannot say that he was in error.   It appears then that she gave her note or due bill and received his note for the same amount as security.   Subsequently she was compelled to pay her note, and was therefore entitled to recover from his estate the amount of his note which she held as security.   It makes no difference that she paid her note out of the proceeds of the Coal Company stock, because the stock was hers.   As found by the learned auditing judge, it had been delivered to her by her grandfather and was therefore an executed gift.   A payment with the proceeds of part of it was as much a payment out of her own means as a check on her own bank account would have been.   We find no error in this part of the case.

But the allowance of the claim on the $30,000 note cannot be sustained on any legal principle.   It was a mere promise to pay, without consideration, and not enforceable against the promisor or against his estate.   The learned counsel for the appellee have gone very far back in history to show that a consideration was not essential in the early common law, and that a seal was only a matter of technical form.   But the necessity of a consideration having been settled more than four hundred years ago is scarcely open to discussion now, and while the distinction between sealed and unsealed instruments may be technical it is part of the bed rock on which the whole law of contracts is built.   The cases cited by the learned court below

are cases of sealed instruments and stand on entirely different ground. The note is also spoken of as "an executory contract not under seal," but this is a misnomer. It is not a contract at all, but a mere naked promise, nudum pactum, for want of a consideration, which is an essential part of the definition of a contract, "an agreement upon sufficient consideration, to do" etc., 2 Black. 442.

An effort is made to sustain the case on the ground of natural love and affection of the maker of the note for his granddaughter. But the argument falls into confusion from the indiscriminate use of the terms "moral obligation" and "moral consideration." They are not convertible terms, even if there is any such thing as a moral consideration. Natural love and affection are a good consideration for an executed contract or gift, and in this state a moral obligation is a good consideration for an express promise, but natural love and affection are not a moral obligation in such sense as will support even an express promise to make a gift. "Natural affection is not a sufficient consideration to support a simple contract:" Byles on Bills, p. 214. (8th Am. ed.) "A consideration founded on mere love and affection is not sufficient to sustain a suit on a bill or note:" Daniel on Negotiable Instruments, sec. 179. It is the nature of a gift to be revocable until executed by delivery, and the authorities are uniform that the delivery of a promissory note or check is not an executed gift of the money, but remains revocable, and will be revoked by the death of the promisor, before actual payment: 8 Am. & Eng. Ency. of Law, 1320; Daniel on Negot. Insts. secs. 179, 180; Chitty on Bills, 85; Byles on Bills, p. 144, 15th ed. 1891, p. 213, 8th Am. ed. 1891.

Decree reversed as to the $30,000 note, distribution to be corrected accordingly. Costs to be paid by the appellee.