## STATE v. WALDROP.

1. Evidence—Writings.—Where it is sought to prove a mere collateral fact by a written instrument, it is not necessary to formally prove its execution.

2. Principal and Agent.—A party may ratify the act of his agent without being present at time of commission.

3. Evidence—Witness—Discretion.—It is not an abuse of discretion in trial Judge to permit the State to interrogate a witness as to his evidence at coroner's inquest, where it is used to show that State was taken by surprise by the witness.

4. Self-Defense—Habitation.—A Threat against a habitation is not a threat against the person.

5. Assault—Self-Defense.—The doctrine that a person upon whom a simple⁰ assault is made is not bound to retreat, but may take the life of the assailant to prevent the simple assault from being carried into effect, is not sound.

6. Habitation—Rent—Power.—Request to Charge as to right to protect the home against intrusion; as to the duty of a person to leave a house upon request, and to secure possession by suit; as to a verbal contract to rent land for one year, rentee being in possession under the contract; that delegated power cannot be delegated; properly refused in this case, because there is no evidence to which they would be applicable.

7. Appeal.—Party must call attention of Judge to error in stating issues raised by pleadings.

8. Rehearing *refused.*

Before Gary, J., Greenville, January, 1905. Affirmed.

Indictment against John Waldrop. From sentence on verdict, the defendant appeals on the following exceptions:

"I. Error in allowing the State to introduce in evidence the contract between D. L. Donald and S. L. Maddox, the said contract not having been proved in the manner required by law.

"II. In allowing the witness, D. L. Donald, to testify that he rented the premises in dispute to Mr. Maddox, the deceased, through Mr. Ellison, acting as his agent, the agency not having been proved, and the witness admitting that he was not present at the said time, and there being no proof

that the owner of said premises authorized the said Ellison to make the said contract or ratified the same.

"III. Error in allowing the State to interrogate its witness, Seawright, as to his testimony at the coroner's inquest to the effect that 'just before Mr. Maddox began to undo his overcoat, he said, "I have a written contract for rent of this place in my pocket," and started to put his hand to his pocket to get his contract. At this time Mr. Waldrop shot him.' It being respectfully submitted that it was not shown that the said witness was hostile, and the State, therefore, had no right to contradict him or lay the foundation therefor. Again, it was error to allow this testimony taken by the coroner to go to the jury, inasmuch as the defendant was not there at the time, and any statement made therefore, under such circumstances, would not be competent in the trial of this case.

"IV. Error in refusing defendant's 6th request to charge, which was as follows: 'VI. That where a person is assaulted by one who has threatened to kill him, in such a manner as to give him reasonable cause to believe that such threat will be carried out, he is not bound to run and escape in that particular instance, if he would thus increase his danger by encouraging his assailant to repeat the attempt when he will perhaps be less prepared to resist.' The said request containing a sound proposition of law and applicable to the case; in that the defendant testified that before he fired the first shot, the deceased ran his hand into his right overcoat pocket, from which he had seen the deceased just before that time draw his pistol, and at the time the defendant fired, the deceased was apparently trying to draw the pistol from the said pocket.

"V. Error in refusing to charge defendant's 11th request to charge, which was as follows: 'XI. An assault is an attempt unlawfully to apply any, the least, actual force to the person of another, directly or indirectly; the act of using a gesture towards another, giving him reasonable ground to believe that the person using such gesture meant to apply the

actual force to his person.    A person assaulted under such
circumstances is not bound to retreat and thereby escape the
assault, leaving the danger still impending and perhaps
increased by the very act of retreating.'    The said request
containing a sound proposition of law and applicable to the
case in that the defendant claimed that he was assaulted by
the deceased at the time he fired the first shot, and his testi-
mony in that regard should have been submitted to the jury
under the charge of the Court as to what constituted an
assault.

"VI. Error in refusing to charge defendant's 12th request
to charge, which was as follows : 'XII. That if the deceased
had threatened the life of the defendant and the defendant
honestly believed that the deceased intended to carry out the
threat by taking his life or doing him some serious bodily
harm, and the jury, viewing the circumstances from the
standpoint of the defendant at the time of the fatal encounter,
conclude as a reasonable man of ordinary reason and firm-
ness he was justified in the belief, then the defendant was
entitled to be more watchful and to interpret the acts of the
deceased more harshly than he otherwise would have been
justified in doing.'    The said request containing a sound
proposition of law and applicable to the case, in that the de-
fendant offered testimony to the effect that the deceased had
said just previous to the fatal encounter that on the 1st day
of January he was going into the house if he had to break
the door down with an axe, and whether or not this testi-
mony partook of a threat should have been submitted to the
jury.

"VII. Error in refusing to charge defendant's 13th request
to charge, which was as follows : 'If a person be in the bare
possession of a house claiming it as his home, he has a right
to protect it against all forcible intrusion offered by any per-
son except an officer of the law authorized by the order of
some court to dispossess him.    Ejectment proceedings in
some form or other before a civil court is the legal method
to test the right of possession to land.'    The said request

containing a sound proposition of law and applicable to the case in that the defendant offered testimony tending to show that he had rented the house in question for the year 1905, and had gone into possession, and that when ordered to leave the said premises, at the time of the 'fatal encounter, the deceased refused to do so, and made an effort to draw his pistol. In this connection, error in refusing the request because 'the defendant in his narrative of the homicide did not seek to excuse the act in defense of his habitation but in self-defense.' It being respectfully submitted that the defendant testified as to the facts in connection with the entire transaction and was entitled to whatever benefits such facts would entitle him to under the law.

"VIII. Error in refusing to charge defendant's 14th request to charge, which was as follows: 'If a person in the possession of a house order another person to leave the house, then it is the duty of such person so ordered to leave to do so, and to resort to a court of law for the enforcement of any right claimed by such person in the house.' The said request containing a sound proposition of law and applicable to the facts of the case in that the defendant offered testimony tending to show that he was in the legal possession of the house in question and just before the fatal rencounter ordered the deceased to quit the premises, which the deceased not only refused to do, but made an effort to draw his pistol in a threatening manner.

"IX. Error in refusing to charge defendant's 15th request to charge, which request was as follows: 'If the jury believe that D. L. Donald, as the agent for his wife, the owner of the land mentioned in the testimony, made a verbal contract with the defendant, Waldrop, for the possession of the land for the year 1905, and if the jury believe that said Waldrop went into possession of said land in pursuance of said contract, then such possession would be valid as against the world for the space of one year.' The said request containing a sound proposition of law and applicable to the facts of the case in that the defendant offered testimony tending to

show that he rented the premises in dispute for the year 1905 from D. L. Donald, the husband and agent of the owner of the said premises, and had gone into possession thereof, and being in possession, his right to defend his person and his habitation would be much higher and more sacred in the eyes of the law; than if he was there as a trespasser.

"X. Error in refusing defendant's 16th request to charge, which request was as follows: 'Delegated power cannot be delegated. If the jury believe that D. L. Donald, as the agent of his wife, the owner of the land, asked J. A. Ellison to assist him in securing a tenant for the year 1905, then J. A. Ellison had no legal authority to make a contract for the lease of the land, and no person could derive any right in said land by any attempted exercise of any such power on the part of J. A. Ellison.' The said request containing a sound proposition of law and applicable to the facts of the case in that there was testimony tending to prove the facts upon which the said request was predicated.

"XI. Error in refusing defendant's 17th request to charge, which was as follows: 'While a verbal contract for the future possession of land, so long as it remains executory, cannot be enforced to give the right of possession, yet if the lessee, under such verbal contract, actually go into possession of the land, it is valid to give the lessee a lease in the land for the space of one year as against the world.' The said request containing a sound proposition of law and applicable to the facts of the case in that it showed defendant's right, if the jury believed the facts upon which it was predicated, to the occupancy of the said premises and his right to defend his person and the said occupancy as against any person not possessing an equal right.

"XII. Error in charging 'the defense the defendant has set up is self-defense,' it being respectfully submitted that the defendant's plea was 'not guilty' of the charge alleged in the indictment.

"XIII. After having charged that the defendant's plea was self-defense, error in charging that upon the occasion in ques-

tion, the defendant would have to show among other things that there was 'no other probable means of escape but to shoot,' and that if he had failed to prove this his defense would fall to the ground, it being respectfully submitted that if the defendant was in the lawful occupancy of said house he was not bound to retreat, but had the right to stand his ground and defend his person or his property against any threatened danger."

*Messrs. McCullough & McSwain,* for appellant, cite: *As to defense of habitation:* 17 S. C., 124.

*Attorney General,* contra.

The opinion in this case was filed October 23, 1905, and remittitur held up on petition for rehearing until

November 9, 1905.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   The appellant was indicted for the murder of S. L. Maddox, and the jury rendered a verdict of guilty, with a recommendation to mercy.   The homicide took place on the 31st of December, 1904.   The defendant appealed upon exceptions, which will be set out in the report of the case; and in considering the questions presented by them, reference will be made to the exceptions by numbers.

*First exception:* The appellant's attorneys conceded that the writing was admissible in evidence, for the purpose of showing the contents found in the pockets of the deceased, but contend that it was inadmissible as a contract, unless "proved legally."   There was no subscribing witness to the writing, and the objection to the testimony did not specify in what manner it was to be proved. If, however, the defendant intended to object to the introduction of the writing in evidence, unless there was testimony as to the signatures of the parties, still the ruling of his Honor, the presiding Judge, was not erroneous.   It was not

5—73

the object of the State to prove the contents of the writing further than to show that a contract was entered into between the parties by which the deceased became the lessee of the land for the year 1905. This was a mere collateral fact that did not render necessary formal proof of the execution of the instrument. *Lowry* v. *Pinson,* 2 Bail., 324; *Sims* v. *Jones,* 43 S. C., 91, 20 S. E., 905.

*Second exception:* The record discloses the following during the examination of D. L. Donald: "Who owns the Seawright place where Maddox was said to have been killed? My wife. Who manages the place? I do. To whom was it rented for the year 1905? To Mr. S. L. Maddox. By Mr. McCullough: When did you rent it to Mr. Maddox? I rented it through my agent, Mr. Ellison, acting as my agent. Were you there? No, sir. By Mr. McCullough: I ask, then, that your Honor strike that testimony out." The presiding Judge ruled that he could ratify the act of the agent, whether he was present or not, and in this we see no error.

*Third exception:* The testimony was intended merely to show that the State was taken by surprise. The conduct of a case must, necessarily, be left in a large measure to the discretion of the presiding Judge, and there was no abuse of discretion in this instance.

*Fourth exception:* In refusing the sixth request set out in this exception, his Honor, the presiding Judge, said: "This request is refused for the reason that while admitting it to be a correct abstract proposition of law, there is no evidence in the case that would make such a charge applicable." One witness testified as follows: "Q. Did Mr. Maddox ever tell you his intention about moving any negroes into that house? A. Yes, sir. Q. What did he tell you? A. He told me that when New Year's day came, regardless of who was in there, that he was going to take his axe down there and break the door down, and move in on them."

Another witness testified as follows: "Q. Did you ever hear Mr. Maddox say anything with reference to the place in dispute? A. Yes, sir. Q. When was it? A. It was some time before Christmas. Q. What did he say? A. Well, we were just laughing and talking, me and Mr. Maddox, and I said: 'It seems that you are going to get in trouble about that place?' and he said: 'I think not, but it don't matter a damn who is in that house when the new year comes, I am going to put Andrew Madison in there.' Q. Did you state that to Mr. Waldrop before the killing? A. Yes, sir."

While this testimony unquestionably tends to prove that the deceased threatened to attack the *habitation*, there is not a particle of testimony tending to establish threats to take the life of the defendant or to do him any bodily harm.

In 1 Arch. Cr. Pr. and Pl., 693, it is said: "If a person by violence or surprise, attempt to commit a felony upon the person, habitation, or property of another, the latter may repel force by force, and if, in the conflict, he happens to kill the offender, the homicide is justifiable," thus recognizing the distinction between felonies committed upon the person, and upon the *habitation*. This exception does not involve the question whether a person has the right to defend his habitation, but the question under consideration is whether a threat against a habitation is a threat against the person. In our opinion it is not.

*Fifth exception:* The request set out in the exception was inapplicable to the facts of this case, and its tendency was to mislead and confuse the jury, by seemingly recognizing the doctrine that a person upon whom a simple assault is made is not bound to retreat, but may take the life of the assailant to prevent the simple assault from being carried into effect.

*Sixth exception:* In refusing the request mentioned in this exception, the presiding Judge said: "Refused for the reason that there is no testimony even tending to show that the deceased ever threatened the life of the defendant." This

exception is disposed of by what was said in considering the other exceptions.

*Seventh, eighth, ninth, tenth and eleventh exceptions:* In refusing the requests mentioned in these exceptions, the presiding Judge assigned the following reasons: "Refused for the reason that the defendant, in his narrative of the homicide, did not seek to excuse the act in defense of his habitation, but in self-defense. While it may be true that the quarrel or difficulty grew out of a discussion of the right of possession, still there is nothing in the case that would tend to show that the deceased was making any effort to dispossess defendant. On the contrary, the defendant in his testimony states that he invited the deceased to come in."

In considering whether the requests were properly refused, it will be necessary to refer to the testimony showing the relation in which the parties stood to each other. D. L. Donald, a witness for the State, testified as follows: "Who owns the Seawright place, where Mr. Maddox was said to have been killed? My wife. Who manages it? I do. To whom was it rented for the year 1905? To Mr. S. L. Maddox. So you did rent it to Mr. Maddox? Yes, sir; when the contract was drawn I was present. When was the contract drawn? I don't remember the date, you have it there. Do you know Mr. Waldrop? Yes, sir. Did you ever have any conversation with him about renting the place? Yes, sir. At what time? The same day it was rented. The same day Mr. Ellison rented it? Yes, sir. You were not there? I was not there when the trade was made between Mr. Ellison and Mr. Maddox. What day was it you had a conversation with Mr. Waldrop about renting it? I don't remember the date. At that time, had you heard that Mr. Ellison had rented the place to Mr. Maddox? No, sir. So you had a conversation with Mr. Waldrop before you knew what Mr. Ellison had done? Yes, sir. So you rented it to Mr. Waldrop? We agreed on the price. What was the contract? We agreed on a contract and he was to come

over to my place the next day and sign a written contract. What other things were to go into that contract? Similar as to what is in that one. What other things did you and Mr. Waldrop discuss? I told him that I would have to have a written contract. What else was to go in that contract, except what was discussed between you and Mr. Waldrop? I don't remember that anything was. And was that to be reduced to writing? Yes, sir. When was it to be reduced to writing? The next day or the day after, he was to come to Williston, and we were to reduce the contract to writing. At that time, had you heard nothing from Mr. Ellison? No, sir. When did you hear from Mr. Ellison? About a half an hour after that. When did you see Mr. Waldrop after that? This is the first time. Were you ready to execute the contract if he had come? No, sir, I was not; I had learned that Mr. Ellison had rented it to Mr. Maddox, and I wrote him a note to that effect. When? As soon as I could drive to Mr. Moon's. So, if he had come the next day, you would not have entered into the written contract with him? I could not have, Mr. Maddox had a prior claim. The fact is, on that day, as the agent for your wife, you made the contract verbally with Mr. Waldrop, and the contract was to be subsequently reduced to writing? We specified what was to be in the contract?"

On the evening of the day when said negotiations took place, the defendant did some plowing on the land. On the day preceding the homicide, the defendant, about dark, moved certain articles of furniture into the house and spent the night there. Wiley Seawright was then in possession and agreed with Waldrop to move away the next day, but there was testimony tending to prove that he had not surrendered the premises to Waldrop when the difficulty occurred. The defendant stated in his testimony that he extended an invitation to the deceased to come into the house.

Wiley Seawright testified: "I heard Mr. Maddox say, 'As soon as Wiley gets out I am going to move Anderson Madison in;' and Mr. Waldrop said: 'If you have the law to move

a damn negro in on me, put me out;' and Mr. Maddox said, 'I have the law in my pocket,' and Mr. Waldrop said: 'Get out of my house,' and about that time I looked and Mr. Waldrop had his pistol out to shoot, and did shoot, and Mr. Maddox staggered and made for the front door."

It will thus be seen that the testimony tended to show: 1. That the deceased had the superior right to the possession of the premises. 2. That while both the defendant and the deceased were in the actual and peaceable possession, Wiley Seawright had not formally surrendered his right of possession to either. 3. That the deceased did not enter the house as a trespasser, but upon the invitation of the defendant. 4. That although the deceased was notified to get out of the house he was immediately shot. Under these circumstances the requests were inapplicable to the facts of this case. *State v. McIntosh*, 40 S. C., 349, 18 S. E., 1033.

*Twelfth exception:* If the presiding Judge erred in stating the issues raised by the pleadings, it was the duty of the defendant to call his attention to such fact, if he intended to rely upon it is a ground of appeal.

*Thirteenth exception:* This exception is disposed of by what was said in considering the other exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

THE CHIEF JUSTICE *did not participate in this opinion because of illness.*

PER CURIAM. November 9, 1905—After careful consideration of the petition herein, the Court is satisfied that no question of law or of fact has been either overlooked or disregarded. It is, therefore, ordered, that the petition be dismissed, and that the order heretofore granted staying the remittitur be revoked.