### 10113

### NAUFUL v. NATIONAL LOAN & EXCHANGE BANK OF COLUMBIA.

#### (97 S. E. 843.)

1. EVIDENCE — WHAT CONSTITUTES "PROOF."—In general, any fact or circumstance which leads the mind to the affirmative or negative of any proposition constitutes "proof."

2. EVIDENCE — PAROL EVIDENCE RELATING TO COLLATERAL WRITINGS.— Where a writing relates to a collateral circumstance, and an inference favorable to the party arises out of the fact of its execution and existence and not out of its particular contents, parol evidence is admissible.

3. BANKS AND BANKING—CHECK ON OPEN ACCOUNT—PAYMENT FROM SAVINGS ACCOUNT.—Where balance in plaintiff's open account was insufficient to pay check drawn thereon when presented, defendant was not bound to pay check by supplementing deficiency from plaintiff's savings account.

Before WHALEY, County Judge, Richland, July Term, 1917. Affirmed.

Action by Lillie Nauful against the National Loan and Exchange Bank of Columbia. Verdict for defendant, and plaintiff appeals.

The following are the exceptions to be reported:

1. Because the Court erred in allowing the defendant to offer in evidence, over the objection of the plaintiff, the letter purporting to be written from the Federal Reserve Bank of Richmond to the defendant bank in this case; said letter being merely hearsay, and not admissible against the plaintiff in this action.

2. Because the Court erred in allowing said letter to be introduced in evidence, over the objection of the plaintiff, for the following reasons:

(a) It was purely hearsay testimony, being a mere declaration of the bank in Richmond to the bank in Columbia, and not competent against plaintiff, or binding on her in any way.

(b) There was no proof that the letter was written by any authorized agent of the bank in Richmond, and no proof that the bank there was authorized to speak for the plaintiff.

(c) Because the testimony in the case, and the law of the land, showed that the bank in Richmond was the agent of the defendant bank, or of some other bank, and was not the agent of the plaintiff, and, therefore, its declarations were not admissible against the plaintiff.

3. Because the Court erred in allowing the defendant to introduce in testimony, over the objection of the plaintiff, the alleged carbon copy of the alleged letter written by the defendant to the Federal Reserve Bank in Richmond, for the following reasons:

(a) Because it was a mere self-serving declaration made by the defendant, and not admissible against the plaintiff.

(b) Because it was a mere copy, did not profess to be anything else, and no effort was made, and none pretended to have been made, to produce the original, and for that reason it was secondary testimony, even if it had been admissible otherwise, and was not competent evidence against the plaintiff.

(c) Because the letter itself was unintelligible, did not show that it had any bearing on the case, was not addressed to any one, and was incompetent against the plaintiff.

4. Because the Court erred in allowing the witness, Berry, to testify as to the custom of the bank in handling its business, stamping its letters, etc.; the same being mere self-serving declaration, not binding on the plaintiff, and incompetent and irrelevant against her.

5. Because the Court erred in holding that, when one issues a check, he is responsible for the act of the bank who presents the check to the bank on which the check is drawn, when he should have held that where one deposits a check in a bank for collection, and that bank undertakes to make the collection through another bank, the second bank is the agent of the first bank, and not the agent of the holder of the check, and that, therefore, any acts or declarations of the second bank, or any subsequent banks through which the check is handled, does not bind the holder of the check, and is inadmissible against him for any purpose.

· 6. Because his Honor erred in not striking out all the testimony of the witness, Berry, on the motion of plaintiff's attorney, which related to the letters, records, and other acts of said witness, when said witness admitted on the stand · that everything he had testified to was hearsay, that he did not do any of the things he had testified to himself, that he was speaking entirely from records, none of which he had made himself, and that he had no personal knowledge whatever, of anything that he had testified about.

7. Because his Honor erred in refusing to rule out said testimony, and order it stricken from the record, on the ground that the plaintiff's attorney had not objected to the testimony in time, when the record shows that the objections were numerous, that they were made in almost every conceivable form and fashion, that they were persistent, and that the attorney for the plaintiff had done everything in his power, short of absolute discourtesy, to have the objections upheld.

8. Because his Honor erred in refusing to strike out the objectionable testimony, on the ground that he did not know what to strike out, and what not to strike out, when it was his duty to know, and when the record of the official stenographer of the Court was before him, and when there was no difficulty whatever in ascertaining what testimony given by said witness, Berry, was not based on his own knowledge, when the witness himself, under oath, had admitted, in the presence of the Court, that he had no personal knowledge of anything he had sworn to.

9. Because said testimony was material, went to the very gist of the whole case, was wholly hearsay and incompetent, and his Honor erred in not so holding, and erred in not striking said testimony from the record.

10. Because the Court erred in modifying the following request of the defendant, viz., "That if the jury find from the testimony that the plaintiff had money enough to her credit to pay her check, then it will be the duty of the jury to find substantial damages, temperate in amount, for the plaintiff," in the following manner: "I charge you that, gentlemen, with this modification, provided that that check was drawn on the commercial account which I have been speaking about, because in the light of what I have already said, if it came in as against the commercial account and there was a deficiency therein, the bank would not be required to take money out of the savings department to meet that deficiency"—the error being that both accounts being in the individual name of the plaintiff, and the law requiring the defendant to honor the check of its depositor, and the law giving the right to the bank to hold back any funds belonging to the depositor to indemnify it for anything that may be owing, it was the duty of the bank in this case to have paid said check.

11. Because the Court erred in refusing to charge the following request submitted to the Court by the plaintiff, viz., "That if the jury find from the testimony that the plain-

tiff had sufficient funds in the bank to her credit to pay the check in question, either in her general account or her savings account, then it was the duty of the bank to have paid the check," for the reason that, said accounts both being in the individual name of the plaintiff, it was the duty of the defendant to have paid the check, as that was a positive duty imposed upon it by law. .

For the further reason that under the contract in this case, as evidenced by the savings bank book, offered in evidence in this case, the defendant had the right to have supplemented the deficiency in the check by enough money out of the savings bank deposit to have paid said check, without waiting for the presentation of the book, and having such right by contract, and the law requiring said bank to protect the checks of its depositors, it was its duty to have done so, and the Court should have so held, and charged said request.

12. Because his Honor erred in refusing to charge request No. 4, of the plaintiff, as follows: "That the law gives a bank the right to hold any money they may have on deposit, until all debts due by the depositor are paid in full"—said request embracing a sound proposition of law, and applicable to the facts of this case, for the reason that the defense of the defendant was that it had to hurry the check to the bank at Richmond, to keep it from being charged against it, and that being one of its excuses for failing to pay said check.

13. Because his Honor erred in refusing to charge, when requested by the plaintiff, that under the contract between the plaintiff and the defendant, as shown by the savings bank book, the defendant had the right to apply as much of it to this check in suit as would pay the check, and it was its duty to do so; said request embracing a sound proposition of law for the reason that where one person can prevent injury to another, without injury to himself, it is his duty to prevent such injury, and, for his failure to do so, the injured party may recover damages, and for the further

reason that, in this case, the defendant was under a legal obligation to pay the checks of the plaintiff as long as she had money to her credit sufficient to pay said checks, and, the defendant having the legal right to take out of the savings deposit sufficient funds to make up the deficiency in the other account, it was its duty to do so, and his Honor should have so held and charged.

14. Because his Honor erred in charging, at the request of the defendant, the following request, viz.: "(2) Where a depositor carries in the bank both an open account and a savings account, the bank is not authorized, in the absence of special directions, to pay a check drawn on the open account from the funds in the savings account, and is in no wise liable for failure to do so"—said charge being erroneous for the following reasons, viz.: That under the terms of section 3 of the contract between the plaintiff and the bank in this case, the bank had the perfect right to pay out said savings deposit at any time, and in any way it saw fit, without consulting the plaintiff; and for the further reason that there is no general law to the effect as charged by the Court, but the relations between a customer and a bank, in regard to savings deposits, is one entirely of contract, as it was in this case, and his Honor erred in charging to the contrary.

15. Because his Honor erred in charging that humiliation, liability of the plaintiff to arrest, etc., were not elements of damage in a case of this kind, when, we respectfully submit, that they are elements of damages, and his Honor erred in holding to the contrary.

16. Because his Honor erred in allowing the letter from the Federal Reserve Bank of Richmond, to the defendant, to be introduced in evidence, because the witness testified that it came through the regular course of mail; that fact not making a letter competent, which was otherwise incompetent ·

17. Because his Honor erred in ruling and holding that where the original of a letter has gone to a party outside of

the State, and notice to produce cannot be served on that party, if the party to the suit has a copy, he can introduce it, if otherwise competent; said holding being contrary to all rules of evidence, and harmful to the rights of the plaintiff in this case.

*Mr. W. N. Graydon,* for appellant, submits: *The unsworn statements of the bank in Richmond could not bind plaintiff:* 92 S. C. 440. *A letter from a third party to one of the litigants, is not admissible against the other litigant:* 75 S. C. 342; 86 S. C. 8; 81 S. C. 541; 69 S. C. 429; 8 Rich. Law 129. *One who deposits a check in a bank for collection is not responsible for the act of the bank, unless the bank is the agent of the depositor:* 91 S. C. 294. *A bank is liable for damages for failing to pay a check drawn by a depositor, when he has sufficient funds in the bank to pay it:* 69 S. C. 374; 74 S. C. 185. *The bank has the right to set off as against a depositor any debts due the bank by the depositor:* 92 S. C. 445.

*Messrs. Melton & Belser,* for respondent, submit: *It was competent for defendant to introduce in evidence a carbon duplicate of a letter from defendant to the Federal Reserve Bank of Richmond:* (U. S.) 22 L. Ed. 299; 52 S. C. 82; 59 S. C. 471; 104 Va. 97; 24 Barb 404; 65 Act 678; 93 S. C. 295; 90 S. C. 475. *Where a depositor carries in a bank both an open account and a savings account, the bank is not authorized, in the absence of special directions to pay a check drawn on the open account from funds in the savings account, and is in nowise liable for a failure to do so:* Morse on Banking, sec. 620, p. 1030; 7 Corpus Juris 696; L. R. A. 1916a, p. 1220; 74 S. C. 188; Michie on Banking, p. 1151. *As to the rule of damages governing the case:* 74 S. C 188; 23 L. R. A. 190; 58 L. R. A. 956; L. R. A. 1916a, 1220.

January 11, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action for damages, alleged to have been sustained by the plaintiff on account of the refusal of the defendant to pay a check, which she had drawn in favor of Palmer-Sowers Company, of Chattanooga, Tenn., on the 1st of December, 1916, for $224.43.

The plaintiff had two accounts with the defendant—one an open account and the other in the savings department. The check in question was drawn by her, against her open account.

The following statement appears in the argument of the appellant's attorneys:

"The plaintiff claimed that, at the time the check in question was presented for payment, she had ample funds in the bank to pay the check. The defendant claimed that the account lacked a small amount of having enough money to pay the check when presented. The check was drawn for the sum of $224.43, dated December 1, 1916.

"One of the most hotly disputed questions was what day the check was presented for payment. The plaintiff claimed that it was presented for payment on December 6, 1916; and the defendant claimed that it was presented on December 8, 1916. If the check was presented on December 6, 1916, there were ample funds to pay it, in the regular deposit mercantile account. If it was presented on December 8, between 12 and 4 o'clock, then the account lacked either $13.13 of having enough money on hand to pay check, or it lacked $53.13 of having enough on hand, depending on the time when a check for $40 was cashed on that day."

The jury rendered a verdict in favor of the defendant, and the plaintiff appealed upon exceptions, which will be reported.

The exceptions assigning error on the part of his Honor, the presiding Judge, in allowing the introduction of testimony therein mentioned, cannot be sustained, for the following reasons: "In general, any fact or circumstance, which leads the mind to the affirmative or

negative of any proposition, constitutes proof." *Hunter v. Glenn,* 1 Bail. 542; *Hobbs v. Beard,* 43 S. C. 370, 21 S. E. 305.

In the next place, the issue which the testimony was introduced to establish did not constitute the right for which the plaintiff sued, but was merely collateral in its nature.

"The general rule that parol evidence of the contents of a paper writing, which the party has in his possession, or which he may procure to be produced, by the process of the Court, cannot be given in evidence, holds universally, wherever it constitutes the evidence of his right to the thing for which he sues; and that because it is the most certain, and, therefore, the best. But where the writing relates to a collateral circumstance, and an inference favorable to the party arises out of the fact of its execution and existence, and not out of its particular contents, parol evidence is admissible." *Lowry v. Pinson,* 2 Bail. 324, 23 Am. Dec. 140; *Sims v. Jones,* 43 S. C. 91, 20 S. E. 905; *Hampton v. Ray,* 52 S. C. 74, 29 S. E. 537; *Elrod v. Cochran,* 59 S. C. 467, 38 S. E. 122; *State v. Waldrop,* 73 S. C. 60, 52 S. E. 793.

The next question to be determined is whether there was error on the part of his Honor, the Circuit Judge, in ruling that it was not the duty of the defendant to pay the check by supplementing the deficiency from her savings account. Rule 3 printed in the book containing the conditions upon which the deposits were made in the savings department of the bank is as follows: "Drafts may be made personally or by the order in writing of the depositor (if the book has the signature of the party on its signature book); or by letters of attorney, duly authenticated; but no person shall have the right to demand any part of his or her principal or interest, without producing his or her bank book, that the payment may be entered therein; nor shall any person have such right, without previous notice in writing to the bank, of his or her intention to

make such demand of thirty days, for any amount not exceeding three hundred dollars, and sixty days for any amount exceeding that sum; but money may be voluntarily paid by the bank daily, and without such notice, and without thereby waiving the right of the bank, to such notice and time of payments."

· The appellant's attorney relies upon the following authorities: *Callaham v. Bank,* 69 S. C. 374, 48 S. E. 293, 2 Ann. Cas. 203; *Lorick v. Bank,* 74 S. C. 185, 54 S. E. 206, 7 Ann. Cas. 818; *Hiller v. Bank,* 92 S. C. 445, 75 S. E. 789.

In the first mentioned case, the question was whether the plaintiff had a right of action against the defendant for its refusal to pay a check drawn by him, in favor of a third party, in the absence of notice to the plaintiff that the bank had applied his funds on deposit in extinguishment of past-due claims held against him by the bank, when he had deposited with the bank sums of money sufficient to meet payment of the draft. The Court ruled that the plaintiff had a right of action against the defendant for such refusal.

In the case of *Lorick v. Bank, supra,* the admitted facts are that the plaintiff on the 14th of March, 1903, deposited with the defendant bank the sum of $313.75, to be paid out on the check of the plaintiff. · On the 2d of July, 1903, she issued to one J. R. Harris, or bearer, a check on the defendant bank for the sum of $13.75; the defendant informed the holder of the check that the plaintiff had funds in its bank to her credit sufficient to pay said check, but that the same were in the savings department of said bank, the rules of which required that all checks presented for payment should be accompanied by the bank's passbook. It was found that the bank made a mistake; for the funds of the plaintiff were not deposited in the savings department of the bank, but were really subject to the check of the plaintiff. His Honor, the presiding Judge, charged the jury:

"That if the jury believed that there was no positive and unqualified refusal to pay, they should find for the defendant."

This Court held that the charge was erroneous, and ordered a new trial.

The facts are thus stated in the case of *Hiller v. Bank*, 92 S. C. 445, 75 S. E. 789:

"All the money deposited by the plaintiff belonged to her individually, but she chose, for convenience, to keep two accounts, one in her individual name and the other in the name of 'Nannie E. Hiller, Adm'x,' although she was not administratrix. The latter account was used in the conduct of a mercantile business owned by the plaintiff and conducted by her and her brother-in-law, John Hiller. On this account John Hiller was authorized to check, signing the checks 'Nannie E. Hiller, Adm'x.' Both John Hiller and the plaintiff issued checks, against this account, which were paid and charged against it, until several checks were presented which would have overdrawn the account. Instead of refusing payment, the bank, by the direction of John Hiller, charged this overdraft to the account kept in the name of Nannie E. Hiller. No evidence was offered that John Hiller was authorized to use or control the latter account. In this state of the evidence, the Circuit Judge directed a verdict in favor of the plaintiff for $158.54, the balance of the Nannie E. Hiller account after deducting a check for $55.20, which the plaintiff admitted she had signed without the suffix, 'Adm'x.'

"The Court refused to allow the defendant to prove that the checks, which went to make up the overdraft transferred or charged to the Nannie E. Hiller account, were signed by the plaintiff herself."

Upon this state of facts, this Court ruled as follows:

"There is no escape from the conclusion that this was error. When Mrs. Hiller made two accounts with the bank,

under an agreement that John Hiller should have the right to draw, as her agent, on one of them, the bank had no right to charge checks drawn by John Hiller to the other account. Mrs. Hiller had the right to hold the funds deposited on the other account subject to her own control, and that right could not be defeated by the unauthorized action of John Hiller and the bank. This right of a depositor to separate and control his accounts is established in this State."

None of these cases sustain the proposition for which the appellant's attorney contends, but, on the contrary, indirectly show that the exceptions raising this question cannot be sustained.

The case of *Simmons v. Bank,* 41 S. C. 177, 19 S. E. 502, 44 Am. St. Rep. 700, is directly in point. The facts in that case relating to the question under consideration were as follows: Jervey & Co. were merchants in the town of Greenwood. They were also engaged in the business of buying and selling cotton. They had been doing business with the defendant bank for several years; the bank advancing the money to buy the cotton, and taking from Jervey & Co. drafts drawn by them against the cotton so bought. Jervey & Co. kept two deposit accounts with the bank, one of which was designated as the merchandise account, upon which was credited money arising from the sales of merchandise, and upon which checks were drawn to pay for the merchandise; the other was designated as the cotton account, upon which the money advanced to buy cotton was charged, and the drafts against the cotton were credited. The merchandise deposit account was headed, "Jervey & Co.," while the cotton deposit account was designated, "Jervey & Co. C. A." The checks drawn on these two deposit accounts were of a different style; one being signed "Jervey & Co.," and the other "Jervey & Co. C. A." When the check then in question was presented for payment, there appeared on the books of the bank a balance on the merchandise account, in favor of Jervey & Co., more than sufficient to pay said

check, and the only reason given for refusing payment thereof was that Jervey & Co. then owed the bank a large balance on the cotton account, besides notes past due to a large amount.

In commenting on the case of *Fogarties & Stillman v. State Bank*, 12 Rich. 518, 78 Am. Dec. 468, Mr. Chief Justice McIver, who delivered the opinion of the Court in *Simmons v. Bank, supra,* used this language:

"That case shows, just what the Circuit Judge held in this case, that the true theory is that, when a bank receives the money of a depositor and places the amount to the credit of such depositor on his deposit account, the implied contract on the part of the bank is that it will pay all checks drawn by the depositor, in such amounts and to such persons as may be mentioned in such checks, as long as there remains to the credit of the depositor * * * an amount sufficient to pay such checks."

He also said:

"The fifth question involves the inquiry whether the bank had a right to set up the past-due notes of Jervey & Co. and the balance against them on the cotton account.    If, as we have seen, the bank received the deposits on the merchandise account *under an implied promise to pay the checks of Jervey & Co. on that account as they were presented, then there was an application of that fund to that purpose, and the bank could not afterwards apply the same to any other purpose; certainly not without the consent of, or previous notice to, Jervey & Co."*    (Italics added.)

In the case now under consideration, we have shown that there was a contract between the plaintiff and the defendant, stipulating the conditions upon which the funds deposited in the savings department were to be withdrawn.    There is no provision therein authorizing or making it the duty of the bank to pay out such funds in order to supplement an overdrawn check on the open account.

Affirmed.