Keller, Appellant, *v.* Davis et al.

Submitted May 6, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*E. O. Golden* and *L. R. Himes,* for appellant.

*D. M. Geist* and *H. A. Heilman,* for appellee.

OPINION BY KELLER, P. J., September 30, 1936:

This case was submitted to us on briefs. Consequently, we did not have the helpful assistance of counsel on some points, which an oral argument might have made more clear. The record was not as complete as it should have been. It did not contain the exhibits offered and received in evidence, which are necessary for an understanding and disposition of the case, but this has been corrected.

242

No question is raised by the defendant and appellee as to the jurisdiction of equity or the plaintiff's right to bring the suit. The defendant formally agreed "that the question of title or ownership of the $2000 [paid by the First National Bank of New Bethlehem to Annie B. Davis out of the Savings Account of Mary E. Keller on September 7, 1934] should be heard in equity and that it should be taken that Annie B. Davis had filed an answer denying the facts relating to the same, as set up in the bill. On the other hand, the plaintiff's counsel formally stipulated that the other specific item referred to in the bill—a check for $1700 drawn by Mary E. Keller to Annie B. Davis on the First National Bank of New Kensington,—should be withdrawn from consideration and would be submitted to the decision of the Orphans' Court. We shall, therefore, overlook all procedural defects (See *Fleming v. Adamson,* 321 Pa. 28, 32, 33, 34, 182 A. 518, 520, 521, and *Finn v. Finn,* 322 Pa. 196, 185 A. 847, 848) and confine our discussion and decision to the $2000 item.

The material facts as found by the court or established by the uncontradicted evidence may be summarized as follows:

Mary E. Keller, a resident of South Bethlehem, Armstrong County, died testate, on September 11, 1934, the result of a stroke of paralysis which occurred on the afternoon of September 5, 1934 between 2:30 and 3:00 o'clock. She left a husband, Frank J. Keller, the appellant, and a sister, Annie B. Davis, the appellee. She appointed Mrs. Davis the executrix of her will [1] and letters testamentary were duly issued to her. Frank J. Keller filed his election to take against the will. After the fifth of September and up until the

[1] By reason of the conflict of interest which has developed between Annie B. Davis, individually, and the estate of the testatrix, Mrs. Davis has very properly agreed to resign as executrix and to the appointment of an administrator d.b.n.c.t.a. in her stead.

time of her death Mrs. Keller was not mentally or physically fit to transact any business.

On September 7, 1934, Mrs. Keller had on deposit in her checking account in First National Bank of New Bethlehem, a small amount of money,—the exact amount of which does not appear in the evidence— and a savings account, No. 963, in the same bank, in which there was to her credit $2050. The bank had issued to her a savings account pass book, No. 963, which contained the rules and regulations applicable to the same, including the deposit and withdrawal of funds.[2] This savings account pass book was in her safe deposit box in said bank.

On August 14, 1934, when she was of sound mind, Mrs. Keller signed an ordinary check on her regular

---

[2] The Savings Account Pass Book contains, inter alia, the following:

Checks Must Not Be Drawn Against This Account
No. 963
First National Bank
New Bethlehem, Pa.
In Account With
Mary E. Keller

New Bethlehem

Penna.

Read Rules and Regulations Carefully, to all of which you assent by accepting this book

Rules and Regulations
Governing this Savings Account

Mode of Depositing Funds

1. Every depositor, of the kind hereinafter provided for, shall at the time of making his or her first deposit, sign his or her name on a signature card, as prescribed by this Bank, and receive a deposit book containing the rules and regulations under which the deposit herein noted is made, and by such signature and receipt of this deposit book, such depositor will thereby be considered as also agreeing to be bound by, and his or her account subject to the rules and regulations of this Bank, as they then exist or may from time to time be amended, as well as such rules and regulations of this Bank as are necessary to con-

244

or checking account in said bank for $2000, payable to Anna B. Davis, and gave it to her. Mrs. Davis told Mr. Sheffer, the vice president and cashier of the bank that "her sister gave her the check". She made no attempt to present the check to the bank or get the money upon it until September 7, 1934, when, it will be remembered, Mrs. Keller was physically helpless and mentally unfit to transact business. Mrs. Davis presented the check to Mr. Sheffer, who asked her if she was to have this money and she said, she was. He then told her they would have to have the pass book for the savings account. She said it was in the safe deposit box—that is, Mrs. Keller's. She produced the key. By Mr. Sheffer's orders the bank custodian, using the

stitute this account a Savings Account, as then or hereafter defined by the Federal Reserve Board......

3. This deposit book must be presented to this Bank whenever a deposit is made in this account, and entry thereof made herein......

### Interest

5. Until further notice, which notice may be given to the depositor at the last address herein given, on deposits entered before and remaining in this Book and Bank on June 1st and December 1st, interest will be allowed at the rate of four per cent. per annum, calculated from the first and fifteenth days of each month following such deposits.

6. The interest will be placed to the credit of the depositor semi-annually on the first days of June and December of each year, and will be paid to the depositor on demand on these days, but if not drawn will be added to the principal and draw interest from the date of credit, thus the depositor is allowed compound interest.

### Withdrawals

7. Deposits entered in this book may be withdrawn by the depositor in person, or by written order, but in either case this deposit book must be presented, that such withdrawal and payment may be duly entered herein......

9. In all cases a payment upon presentation of this deposit book shall be a discharge for the amount so paid......

11. The depositor must notify this Bank of the amount intended to be withdrawn from this account and the time of such

bank's master key and Mrs. Keller's key got the box. Mr. Sheffer went with her to the box which was then opened. She took from it Mrs. Keller's savings account pass book No. 963, presented it with the check to Mr. Sheffer, who charged $2000.02 [3] against Mrs. Keller's savings account, as a withdrawal, both in the books of the bank and in Mrs. Keller's pass book and credited the amount of $2000 to Mrs. Davis' account in the bank, where it remained to her credit at the time of trial. Mrs. Davis had no letter of attorney or other written authority from Mrs. Keller, either general or special, giving her permission to get or open her safe deposit box or take anything from it.

Mr. Sheffer testified that the bank, at times, paid checks drawn on regular or checking accounts on demand out of saving accounts, but required that the savings bank book be presented at the time; and the court below has found as a fact (VI) that "Both prior to and

---

intended withdrawal at least thirty days before a withdrawal is intended to be made. If such amount is not withdrawn within ten days after the time specified, the notice will be considered cancelled.

The form of receipt prescribed by the bank for the withdrawal of funds from Savings Accounts was as follows:

This order must be dated, signed, witnessed and accompanied by your pass book

Account No. ...... New Bethlehem, Pa. ........193..

First National Bank

Savings Department

Pay to ........................or Bearer, $........

......................................... Dollars

100

Which amount I hereby acknowledge I have received out of first deposits made by me and entered in

Deposit Book No. ....of said Bank

Witness: Sign Here ..............

.............................

Balance Shown in Pass Book $........

[3] The amount of the check and the federal stamp tax on the check.

at the time the check was presented for payment, it was the general and common practice of the First National Bank of New Bethlehem to honor and pay checks of the kind and character drawn by the deceased on savings accounts standing in the name of the maker of the check, and to charge the account of the maker with the same." The evidence in the case does not justify as broad or general a finding as this. In fact, as we read the testimony of Mr. Sheffer, it was not the bank's general practice, though it was done at times when the savings account pass book was presented with the check. But accepting the finding of the court as supported by the evidence, it does not justify the bank's action in this case, either in giving Mrs. Davis access to Mrs. Keller's safe deposit box and allowing her to take the savings account pass book from it, or in paying or charging the check against Mrs. Keller's savings account, after thus improperly allowing her to have access to the box and take the savings account pass book. It was not shown that Mrs. Keller had ever withdrawn any money from her savings account by the use of an ordinary check on her checking account or that she had ever allowed a third person to have her savings account pass book in order that he or she might withdraw funds from her savings account on an ordinary check drawn on her checking account. It was not shown that Mrs. Keller had any knowledge of any such practice if the bank had, contrary to its rules, established it. She had a right to rely on the rules and insist on the bank's observance of them: *Peoples Savings Bk. v. Cupps,* 91 Pa. 315; *Wronski v. Frankford Trust Co.,* 84 Pa. Superior Ct. 511, 513; *Walsh's App.,* 122 Pa. 177, 188, 189. The bank would have no legal right or authority, certainly without her permission and allowance [4], to pay on

---

[4] Or even with it, under the Act of Congress of June 16, 1933, infra.

*demand,* out of her savings account, a check drawn on her regular checking account. The mere drawing of the check neither gave nor implied such authority or permission, and when the check was presented for payment, Mrs. Keller's mental condition was such that she could not legally give the bank permission or authority to pay the check out of her savings account. Granted that when she gave Mrs. Davis the check she was of sound mind and knew what she was doing, it carried with it no implied authority to pay the check out of her savings account, and she never gave the bank express authority so to pay it; and, when it was presented, she was incapable of doing so.

Besides, by the Act of Congress of June 16, 1933, (11:45 A. M.) c. 89, sec. 11 (b), 48 Stat. 182 amending or supplementing the Act of December 23, 1913, c. 6, sec. 19 (U. S. C. A. Title 12, sec. 371 (b)—Mason's Code, Supp. No. 3, Title 12, sec. 374-2) it was provided [5]: "The Federal Reserve Board shall from time to time limit by regulation the rate of interest which may be paid by member banks on time deposits, and may prescribe different rates for such payment on time and savings deposits having different maturities or subject to different conditions respecting withdrawal or repayment or subject to different conditions by reason of different locations. *No member bank shall pay any time deposit before its maturity, or waive any requirement of notice before payment of any savings deposit except as to all savings deposits having the same requirement."* (italics supplied). The First National Bank of New Bethlehem is necessarily a member bank of the Federal Reserve System, and subject to this law, so that it could not legally—whatever its prac-

---

[5] Made still more stringent since by Act of Congress of Aug. 23, 1935, c. 614, Title III, sec. 324 (c), 49 Stat. 714 (U. S. C. A. Title 12, sec. 371 (b); Mason's Code July 1935, Title 12, sec. 374-2).

tice may have been—permit such a large sum, $2000, to be withdrawn from the savings account on demand, and without the thirty days' previous notice required for such withdrawal having been given.

But, before, and irrespective of, this Act of Congress, the law was and is that a check drawn on an ordinary or checking account is not an order on, or authority to, the bank to pay the same out of the drawer's savings account, if he have one.

In *Nauful v. National Loan and Exchange Bank of Columbia,* 97 S. E. 843, (S. C.), where a depositor brought an action against a bank for its failure and refusal to pay out of a savings account a check drawn on a checking account which was insufficient to pay it, the lower court charged the jury: "Where a depositor carries in a bank both an open and a savings account, the bank is not *authorized, in the absence of special directions,* to pay a check drawn on the open account from the funds in the savings account and is no wise liable for failure to do so." The Supreme Court affirmed, saying: "There was a contract between the plaintiff and the defendant stipulating the conditions upon which the funds deposited in the savings department were to be withdrawn. There is no provision therein *authorizing* or making it the duty of the bank to pay out such funds in order to supplement an overdrawn check on the open account." (italics supplied). To similar effect, see *Hartford v. All Night & Day Bank* 150 Pac. 356 (Calif.) and annotation in L. R. A. 1916, A. 1223.

That is, even where there is no statute forbidding it, in order to authorize or allow the payment of an ordinary check out of a savings account, the *depositor* and' the *bank* must *both* agree to it. The giving of a check drawn on a checking account does not amount to a direction or an agreement that it shall be paid out of a savings account.

The mere possession by Mrs. Davis of the key to her sister's safe deposit box, at a time when the latter was helpless physically and mentally, did not furnish sufficient authority to the bank's officers to permit Mrs. Davis to have access to the safe deposit box and remove the savings account pass book from it, for the purpose of withdrawing money from the savings account and depositing it to her own credit. *Mesh v. Elenbogen Safe Deposit Co.*, 220 Ill. App. 351; see annotation in 40 A. L. R. 874, 879, 886; *Moon v. First National Bank*, 287 Pa. 398, 402, 135 A. 114; *Guaranty Trust Co. v. Diltz*, 91 S. W. 596 (Texas) ; *Mayer v. Brensinger*, 54 N. E. 159 (Ill.).

It follows that the bank was not justified in permitting Mrs. Davis to have access to Mrs. Keller's safe deposit box and take from it the latter's savings account pass book; nor in paying over to Mrs. Davis, or crediting to her account, the sum of two thousand dollars out of Mrs. Keller's savings account on presentation of a check for that amount drawn by Mrs. Keller on her checking account, even though accompanied by the savings account pass book thus improperly obtained; and that the estate of Mrs. Keller is entitled to have the money thus improperly paid or charged against Mrs. Keller's savings account restored or repaid to it; that the decree of the court below should be reversed and a decree entered requiring the First National Bank of New Bethlehem and the said Annie B. Davis to restore and repay to the estate of Mary E. Keller, deceased, the money so improperly paid out; without prejudice to the right of the said Annie B. Davis, on the repayment by her of the said sum of $2000 to the estate of Mary E. Keller, or on the repayment of the same by the bank to the estate of Mary E. Keller and the repayment of the said sum to the bank by said Annie B. Davis, to present the said check against the estate of Mary E. Keller, as a claim,

and recover upon the same, along with other debts of the decedent, if she is able to establish that it represented a valid and existing debt against the said decedent. If it should appear, on the settlement of the estate, that the check was not given in payment of a debt or obligation due by Mrs. Keller to Mrs. Davis, but was a gift, the death of the drawer would render it incollectible: *Kern's Est. Gilpin's App.*, 171 Pa. 55, 62, 33 A. 129. While our disposition of the case perhaps renders unnecessary a discussion at this time of the conclusion of law of the court below that the possession of the check for $2000 by Annie B. Davis raised a presumption that it was given her in payment of a debt or in payment of cash received for it at the time, it may be proper to say that the cases relied on as supporting the said conclusion of law *(Gettysburg Nat. Bk. v. Kuhns,* 62 Pa. 88; *Lowrey v. Robinson,* 141 Pa. 189, 21 A. 513), were concerned with an attempt by the maker of the check to collect money from the payee or his estate, on the ground that it represented a loan or advancement of the amount of the check, and the general rule then enunciated, and followed in later cases (see, inter alia, *Ritchie v. Deposit & Trust Co.,* 189 Pa. 410, 42 A. 20; and *Heller et al. Exrs. v. Fabel, Exrx.,* 290 Pa. 43, 138 A. 217) was rather a form of the negative proposition, that the mere production of a paid and cancelled check by the drawer of the instrument raises no presumption that the transaction was a loan or advancement of the amount of the check by the drawer to the payee; it will be inferred, rather, in the absence of other proof, that it was given in payment of a debt or for cash received at the time from the payee. The illuminating discussion of the subject of 'presumptions' and the confusion between 'presumptions' and 'inferences', by the Supreme Court in *Watkins v. Prudential Ins. Co.,* 315 Pa. 497, 173 A. 644, must be kept in mind when considering the

right of a claimant to present a check of the decedent as a debt or obligation against the latter's estate, without proof of the circumstances attending its delivery or the consideration moving therefor.

The decree is reversed and the record is remitted to the court below with directions to enter a decree in favor of the estate of Mary E. Keller, deceased—that is, the administrator d.b.n.c.t.a. to be appointed, if not already done—in accordance with this opinion, and without prejudice to the right of Annie B. Davis to present her claim on the settlement of the estate, upon her refunding or repaying the money illegally paid to her. Costs to be divided equally between Mrs. Davis and the First National Bank of New Bethlehem.