# Guarantee Title & Trust Company *v.* Dilworth Coal Company.

*Corporations—Mortgage—Invalid issue of bonds—Payment for stock and bonds.*

Where a corporation issues $156,000 of bonds and $156,000 of stock in payment for real estate worth only $156,000, and thereafter issues $144,000 of bonds and $144,000 of stock for which bonds and stock it receives only $144,000 in cash, so that for its whole bond and stock issue of $600,000 it has received only $300,000 in property and cash, its whole bond issue may be void in the hands of those who originally received the bonds; and if, on a scire facias on the mortgage given to secure the bonds, it appears that all of the bonds are in the hands of the original holders, the validity of the issue of the bonds is a question that must be submitted to the jury.

Argued Oct. 9, 1911.  Appeal No. 127, Oct. T., 1911, by J. T. Blair, Trustee in Bankruptcy of Dilworth Coal Company, from judgment of C. P. Greene Co., June T., 1910, No. 40, on verdict for plaintiff in case of Guarantee Title & Trust Company, Trustee, v. Dilworth Coal Company, with notice to Joe Yetter, et al., terre tenants, and J. T. Blair, Trustee, etc.  Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Reversed.

Scire facias sur mortgage.  Before INGHRAM, P. J.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $338,625.  J. T. Blair, Trustee, appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*H. K. Seymour,* of *Seymour, Patterson & Siebeneck,*

with him *F. W. Downey,* for appellant.—A corporation may not give away its bonds, even if no creditors exist at the time: Gearhart v. Standard Steel Car Co., 223 Pa. 385; New Castle Northern Ry. Co. v. Simpson, 21 Fed. Repr. 533; In re Wyoming Valley Ice Co., 153 Fed. Repr. 787; Bedford R. R. Co. v. Bowser, 48 Pa. 29; Braddock Elec. Ry. Co. v. Bily, 11 Pa. Super. Ct. 144; Skrainka v. Allen, 7 Mo. App. 434; Thomson-Houston Elec. Co. v. Capitol Elec. Co., 56 Fed. Repr. 849; Baker v. Guarantee Trust & Safe Dep. Co., 31 Atlantic Repr. 174; Shellenberger v. R. R. Co., 212 Pa. 413; Mass. v. R. R. Co., 1 Mona. (Pa.) 497; Pittsburgh & State Line R. R. Co. v. Rothschild, 4 Cent. Repr. 107; Louisville, New Albany & Chicago Ry. Co. v. Banking Co., 174 U S. 552 (19 Super. Ct. Repr. 817); Morrow v. Iron & Steel Co., 87 Tenn. 262 (10 S. W. Repr. 495); Gunniso⁻ Gas & Water Co. v. Whitaker, 91 Fed. Repr. 191.

*Willis F. McCook,* with him *B. J. Jarrett, Patterson, Sterrett & Acheson* and *A. F. Silveus,* for appellee.—All cases cited by appellant are based upon facts widely different from the facts here and upon findings that the transactions were fraudulent, hence said cases have no applications to the case at bar.

Creditors' right depends upon right of the corporation, and the intervening trustee in bankruptcy has no higher rights than the defendant corporation: Lyons v. Benney, 230 Pa. 117; Gitt v. Ziegler, 181 Fed. Repr. 810; Manhattan Hardware Co. v. Phalen, 128 Pa. 110; Fidelity Ins. Safe Deposit & Trust Co. v. R. R. Co., 138 Pa. 494.

A corporation can lawfully sell its bonds to its stockholders: Gloninger v. R. R. Co., 139 Pa. 13; Philadelphia Sunbury R. R. Co. v. Lewis, 33 Pa. 33.

The constitution of the state and the decisions of the court make it lawful to pay for stock and bonds in a corporation by the transfer of property: American Tube & Iron Co. v. Hays, 165 Pa. 489; Shannon v. Stev-

enson, 173 Pa. 419; Gamble v. Water Co., 123 N. Y. 91 (25 N. E. Repr. 201) ; American Tube & Iron Co. v. Gas Co., 165 Pa. 489.

It is a universal doctrine and supported by cases decided in almost every state in the Union that the mere over-valuation of property taken to pay stock subscriptions or given for bonds is not of itself sufficient to successfully assail the transaction. Actual fraud must be averred and shown: Rickerson Roller Mill Co. v. Farrell Fdy. & Mch. Co., 75 Fed. Repr. 554; Whitehill v. Jacobs, 75 Wis. 474 (44 N. W. Repr. 630) ; Young v. Erie Iron Co., 65 Mich. 111 (31 N. W. Repr. 814) ; Woolfolk v. January, 131 Mo. 620 (33 S. W. Repr. 432) ; Bickley v. Schlag, 46 N. J. Eq. 533 (20 Atl. Repr. 250) ; Coffin v. Ransdell, 110 Ind. 417 (11 N. E. Repr. 20) ; In re Baglan Hall Colliery Co., Law Reports, 5 Ch. App. 346; Brant v. Ehlen, 59 Md. 1; Troup v. Horbach, 53 Neb. 795 (74 N. W. Repr. 326) ; Lloyd v. Preston, 146 U. S. 630 (13 Super. Ct. Repr. 131) ; New Haven Horse Nail Co. v. Linden Springs Co., 142 Mass. 349 (7 N. E. Repr. 773).

Bonds of a corporation cannot be declared null and void except in a proper proceeding instituted for that purpose and making the bondholders parties. Such bonds cannot be attacked in a proceeding by sci. fa. upon the mortgage where the bondholders have not been made parties and served: Yetter v. R. R. Co., 206 Pa. 485.

OPINION BY MR. JUSTICE BROWN, April 8, 1912:

This proceeding is on a corporation mortgage, instituted in pursuance of a provision in it that, on default in payment of interest on the bonds secured by it, the trustee, upon request of the holders of one-third of the bonds, might proceed by scire facias on the mortgage and prosecute it to judgment, execution and sale of the property. The mortgage was given by the Dilworth Coal Company, which was adjudged a bankrupt after

the writ was issued, and J. T. Blair, its trustee, was allowed to intervene for the purpose of making the defense that the bonds were still in the hands of the original owners and had not been paid for. This defense was regarded as unavailing by the learned trial judge, whose direction to the jury was that, if they should find there had been default in the payment of interest for a period of ninety days, and the trustee had been requested, in writing, by the holders of one-third of the bonds to proceed for the collection of the amount due on all of the bonds secured by the mortgage, their verdict should be for the plaintiff. A verdict was accordingly rendered in its favor for $338,125, and from the judgment entered thereon the defendant's trustee in bankruptcy has appealed.

It is hardly conceivable that the jury, if they had been permitted to do so, would have failed to find that not a single bond issued under the mortgage, in pursuance of the scheme adopted and carried out for the organization of the Dilworth Coal Company, had been paid for either in property or money. The facts as developed seem to clearly show this. In June, 1901, H. P. Dilworth and George M. Dilworth purchased from W. P. Dilworth for $63,622 his half interest in one hundred and thirteen acres of coal land situated in Jefferson township, Greene county. They owned the other half, and the total value of the whole, based upon what was paid for W. P. Dilworth's half, was $127,244. The purchasers immediately took steps to organize the Dilworth Coal Company. An organization agreement, which has been lost, was signed by them and others, who are the beneficial plaintiffs below. That agreement—its contents having been established by parol testimony—provided that the Dilworths' coal land should be valued at $156,-000, and for turning it over to the corporation they were to receive $156,000 in stock and $156,000 in first mortgage bonds of the company. The agreement further provided that the capital stock should be $300,000, and that

a first mortgage should be placed on the property for $300,000, to secure the $156,000 of bonds which the Dilworths were to get, and $144,000 of bonds which were to be issued to others who were to contribute $144,000 as the balance of the capital stock. Each contributor was to be put on an equality with the Dilworths, and for every $1,000 cash contributed he was to receive $1,000 in stock and $1,000 in bonds secured by the $300,000 mortgage. The sum of $144,000 was contributed by different persons, and each one, for every $1,000 paid by him, received twenty shares of the capital stock of the company, at a par value of $50 per share, and a bond for $1,000. Just what the agreement was as carried out appears from the following taken from the testimony of H. P. Dilworth, one of the witnesses called by the plaintiff: "Q. What were the terms of this contract? A. My brother George, and myself put a value of $156,000 on the coal lands we owned, and we were to get $160,000 in bonds or $156,000 rather, and also were to get the same amount of stock of the Dilworth Company. Q. And what else was contributed to the company? A. To anybody else who paid $1,000 they were to get a $1,000 bond and $1,000 par value of the stock for their $1,000 cash. We made an assessment of a $1,000. Q. This agreement provided for the payment of $144,000 cash— cash to the extent of $144,000, took with it bonds and the same amount of stock? A. Yes, sir. Q. What were the parties contributing that to get? A. They were to get $1,000 worth of bonds which would entitle them to $1,000 in stock, equal amount of bonds, equal amount of stock. Q. For $144,000 in cash they were to receive bonds to the extent of $144,000, and also to the extent of $144,000 in stock,—now who were the parties who came into this agreement originally,—the Dilworth Coal Company? A. Eugene O'Neil, $10,000; Calvin Wells, $20,000; F. E. Richardson, $20,000; Pennock Hart, $10,000; Newton Hemphill, $12,000; J. H. Lockhart, $10,000; Henry Buhl, $15,000; J. M. Lockhart, $10,000;

C. B. McLean, $20,000; G. A. McLean, $10,000; James Black, $4,000 and myself $3,000." This witness further testified as follows, when cross-examined by counsel for plaintiff: "Q. Mr. Dilworth, how did you pay for your stock? A. I gave my property. Q. Your property was duplicated in value,—that is, for $156,000 worth of property you received $156,000 worth of bonds and $156,000 stock? A. Yes, sir."

"No corporation shall issue stock or bonds except for money, labor done, or money or property actually received;" Const., Art. XVI, Sec. 7. What the organizers of the Dilworth Coal Company did was done in the face of this provision, but the jury were not permitted to pass upon the validity of the bonds issued to the subscribers to the capital stock of the company, even though they were still in the hands of the original holders. The question of the rights of innocent holders does not arise in this controversy, and there is no merit in the contention of the appellee that the validity of the bonds cannot be questioned because the bondholders did not have their day in court. The holders of the bonds who gave the notice to the trustees to proceed on the mortgage were those to whom $107,000 of the bonds had been issued under the agreement giving them $1,000 in stock and $1,000 in a bond for each $1,000 subscribed, and their holdings were unchanged from the time they received them. They cannot, therefore, be said to have been denied their day in court, for they themselves caused this proceeding to be instituted. H. P. Dilworth testified that he was still the owner of the $81,000 of bonds originally issued to him, and had acquired the $78,000 originally issued to his brother George. E. M. O'Neil, who had received $10,000 of the bonds, was represented on the trial by his general agent, who testified that he still held the bonds. It thus appeared that original holders of $276,000 of the bonds had notice of this proceeding. Of the remaining bonds it was testified that C. B. McLean was still the owner of the $20,000 of bonds origi-

nally issued to him, and an unchallenged statement of counsel for appellant is that James Black, an original subscriber to $4,000 of the bonds, which he still held, was present at the trial. All the original holders of the bonds with the possible exception of C. B. McLean, seem to have had notice of this proceeding, and there was ample evidence to justify the jury in finding that the entire issue was void.

If it had affirmatively appeared that cash or property to the value of $600,000 had actually been turned over to the coal company, a different situation would be presented; but, from what appeared on the trial, the conclusion seems to be unavoidable that all the company got was property and money amounting in value to but $300,000, and that all the parties to the scheme of organization understood this. Of a situation very similar to the one before us Mr. Justice LURTON, now of the Supreme Court of the United States, aptly said: "Whether this 'basis of organization' be construed to be a contract whereby each subscriber to the stock was to be given a bond as a bonus, or each subscriber to the bonds was to be given paid up stock as a bonus, or as an agreement by which each contributor to the capital stock was to receive the obligation of the company, secured by a primary mortgage, that he should be repaid the amount of his subscription, with interest, such an agreement would clearly be illegal and ineffective as to existing or subsequent creditors of the corporation, upon the ground that the payment for the stock was unreal and simulated, or that the bond had been issued upon no consideration: 2 Morawetz, Priv. Corp. § 824; Sawyer v. Hoag, 84 U. S. (17 Wall.) 610; Scovill v. Thayer, 105 U. S. 143. * * * It was an arrangement whereby the franchise was to be secured, and at the same time deprive the public of the security which by law they are entitled to have, and upon which the grant of the franchise depends. Whatever the real motive and purpose of the promoters of this arrangement may have been, its

legal effect, if valid, would have been to throw all the risks and hazards of the business upon the public who should deal with it; while the contributors were to reap all possible gains, and should be secured against loss in the event the enterprise prove unprofitable. Is a contract by which a corporation agrees to repay to the contributors of its capital stock their several contributions, and whereby such contributions are converted into corporate debts, valid even as against the corporation? Upon what consideration does such an agreement rest? And what power has a corporation to bind itself by such a contract?": Morrow v. Nashville Iron, Steel & Charcoal Co., 3 L. R. A. 37.

The validity of the bonds issued by the Dilworth Coal Company was clearly for the jury.

All of the assignments of error are sustained and the judgment is reversed with a venire facias de novo.