## TEPEL v. COLEMAN et al.

(District Court, M. D. Pennsylvania. December Term, 1914.)

### No. 203A.

1. CORPORATIONS &—537—INSOLVENCY—CAPITAL STOCK AS LIABILITY.
   The capital stock of a corporation is not a liability to be taken into account in determining whether a corporation is solvent, as stockholders do not stand on an equal footing with creditors, and their rights are subordinate to the rights of creditors, especially in view of Bankruptcy Act July 1, 1898, c. 541, § 1a (15), 30 Stat. 544 (Comp. St. 1913, § 9585), providing that a person shall be deemed insolvent within that act whenever the aggregate of his property, exclusive of any conveyed, etc., with intent to defraud creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2150; Dec. Dig. &—537.]

2. CORPORATIONS ⬅376—INDEBTEDNESS—PURCHASES OF STOCK—"PROPERTY."

Under Const. Pa. art. 16, § 7, and Act Pa. April 17, 1876 (P. L. 32) § 4, prohibiting corporations from issuing stock or bonds except for money, labor done, or money or property actually received, and providing that all fictitious increases of stock or indebtedness shall be void, where a corporation purchased its own stock and issued a bond secured by a mortgage in payment thereof, the bond and mortgage were void, as the stock of the corporation was not "property" that would enlarge the assets of the corporation and be available for creditors, and the debt created was therefore fictitious.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. ⬅376.

For other definitions, see Words and Phrases, First and Second Series, Property.]

3. CORPORATIONS ⬅544—CAPITAL STOCK AS TRUST FUND.

Under the law of Pennsylvania the capital stock of a corporation is a trust fund for the payment of company debts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2162–2169; Dec. Dig. ⬅544.]

4. BANKRUPTCY ⬅143—TRANSFERS BY BANKRUPT—CAPITAL STOCK AS TRUST FUND.

Under the rule recognized in Pennsylvania that the capital stock of a corporation is a trust fund for the payment of debts, where a corporation owing debts, some of which had not been paid when it subsequently became bankrupt, purchased its own stock and executed a bond secured by a mortgage therefor, the mortgagees were not entitled, as against creditors and the trustee in bankruptcy, to insurance money on certain of the mortgaged property, as until the mortgage was paid the capital stock was not paid for, and the transaction amounted only to an agreement to redeem the stock, and the mortgagee stockholders were therefore attempting to seize capital stock to the prejudice of the creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ⬅143.]

In Equity. Suit by Fred W. Tepel, trustee in bankruptcy of the West Branch Box & Lumber Company, against John J. Coleman, individually and as trustee, and others. Decree for plaintiff.

A. R. Jackson and M. C. Rhone, both of Williamsport, Pa., for plaintiff.

N. M. Edwards and Wm. R. Deemer, both of Williamsport, Pa., for defendants.

WITMER, District Judge. The plaintiff, trustee in bankruptcy of the West Branch Box & Lumber Company, here seeks cancellation of a bond and mortgage, dated May 5, 1913, given by the corporation to John J. Coleman, trustee, in trust for himself and the other defendants, for the sum of $9,915.56, now in custody of this court, being the proceeds of six policies of fire insurance, covering the mortgaged premises and certain personal property of the bankrupt, which sum was paid into court upon an adjustment of the fire loss subsequent to the adjudication in bankruptcy.

The action is brought under section 70c of the Bankruptcy Act.

The facts are: The West Branch Box & Lumber Company is a corporation chartered under the laws of Pennsylvania on the 26th day of

January, 1911, with an authorized capital stock of $40,000. Stock was subscribed for, paid by, and issued as follows: John Coleman, $5,000; John J. Coleman, $5,000; C. H. McLaughlin, $1,500; John Lush, $2,-500; E. W. Cole, $5,000; and William J. Campbell, $1,000—with the exception that McLaughlin yet owed at the adjudication the sum of $400 on his stock for which the corporation had his note. The stock continued to be owned and held by the above parties, without change, until the 5th day of May, 1913. From the inception of the company to this date John Coleman was president of the corporation, Hartman was its general manager and treasurer, and the directors were John Coleman, Hartman, Bright, McLaughlin, and Campbell.

The company began business on January 1, 1911, having about that time purchased from John Coleman a box manufacturing plant, located outside the city limits of Williamsport, this district. It continued to operate the plant until February 13, 1914, on which day the plant and all books of the corporation were destroyed by fire. February 27, 1914, the company was adjudicated an involuntary bankrupt.

The company paid John Coleman $30,000 for the plant, but this did not include any lumber in the yard. It paid a dividend the first year, but at the annual stockholders' meeting for the year 1912, held in January, 1913, the general manager, Hartman, read a statement showing a loss for the year just closed. Whether the loss was $2,500 or $10,-000, Hartman, in his deposition on behalf of the defendants, was unable to say. About the time the corporation began business it borrowed $10,000 on first mortgage from the Board of Trade of the City of Williamsport. At the time of the annual stockholders' meeting mentioned, this mortgage had been reduced to $7,000; but on February 27, 1913, the company again borrowed the $3,000 paid. The old mortgage was satisfied and a new one taken for the sum of $10,000. This mortgage, and the bond secured thereby, remained a debt for the full amount at the date of adjudication. At the time of making application for this new loan, February 1, 1913, the corporation rendered a financial statement to the Board of Trade, and Hartman testified that the condition of the company remained about the same May 5, 1913.

For some time prior to the annual meeting of January, 1913, it was known by some of the directors that no dividend would be declared for the year 1912, for the reason that none was earned, and, when Hartman read the statement for the year's operation showing a loss, the Colemans, father and son, together with D. J. Bright, three of the defendants, criticized the management and complained about the failure to earn dividends. After considerable discussion, Hartman offered to take over the stock of any dissatisfied stockholder on par. John Coleman agreed to sell, but wanted security which Hartman could not furnish. The meeting adjourned without any definite action taken. Before the meeting adjourned, however, John Coleman suggested to Hartman, Campbell, and McLaughlin:

"Why don't you give a second mortgage on the plant and, for that, we will return the stock to the company?"

The parties acting upon this proposition, on May 5, 1913, the stock was delivered by the vendor stockholders to the corporation, and the

latter executed and delivered a second mortgage on the real estate, buildings, and fixtures or machinery in the plant, for $15,500 real debt, in favor of John J. Coleman, trustee, to secure a bond of the company in favor of said trustee for a like amount. The mortgage was recorded in Lycoming county, Pa., on May 13, 1913, and no payment was made on account by the bankrupt. This mortgage required the mortgagor to carry at least $12,000 fire insurance on the buildings for the benefit of the mortgagee. This amount was in force at the time of the fire, but of the $9,915.56 paid into court thereof the sum of $479.41 was on stock and personal property. The policies contained the usual loss clause, "Loss, if any, first payable to John J. Coleman, trustee, as his mortgage interest may appear." Four policies were issued and indorsed January 1, 1914, while two others were issued September 23 and 24, and indorsed January 2, 1914.

Immediately before this second mortgage was given to Coleman, trustee, the corporation owed, exceeding the Board of Trade mortgage, $18,049.15, and of this it owed $13,127.53 at its adjudication. Exclusive of the amount in controversy, the assets of the corporation will not pay the costs of administration.

[1] Coming now to the law of the case, be it said that much evidence was taken upon the question of corporate solvency on May 5, 1913; but the view taken by the court eliminates the necessity of deciding this question. It may be said in passing, however, that the court is of the opinion that capital stock is not a liability to be taken into account in determining whether a corporation is solvent. There does not seem to be any case wherein this precise question has been raised and decided.

"A stockholder is not, by virtue of the fact that he holds the stock, a creditor of the corporation whose stock he holds. The rights of the stockholders are all subordinate to the rights of the creditors of the corporation. The stockholders are not entitled to any of the assets of the corporation or its property until all just debts due by the corporation are paid. The stockholder does not stand on an equal footing with creditors and is not jointly entitled with them to the fund. His claim begins only after every creditor has been satisfied." 4 Thomp. Corp. (2d Ed.) § 4463.

The definition of "insolvency" in section 1a(15) of the federal Bankruptcy Act indicates that the capital stock of a corporation is not to be taken into account in determining whether a corporation is insolvent. Capital stock is a liability, but in no sense can it be said to be a corporate debt to be reckoned with in ascertaining whether the company is insolvent.

It is not necessary to decide whether a preference was created by the indorsements on the insurance policies January 1, 1914, or if on those days the company was insolvent. Neither is the court required to decide whether, under the terms of the mortgage and the policies, Coleman, trustee, is limited to the insurance paid on the buildings, as contended by the plaintiff.

[2] The plaintiff insists that the bond and mortgage are void because the capital stock taken by the mortgagor, in consideration therefor, being its own capital stock, was not property, and furthermore because the bond for which the mortgage was given as security is a

fictitious debt, within the meaning of the Constitution and Laws of Pennsylvania. Article 16, § 7, of the Constitution, provides:

"No corporation shall issue stocks or bonds, except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

The Act of April 17, 1876 (P. L. 32) § 4, which was enacted to carry the constitutional mandate into effect, also says:

"No such corporation shall issue either bonds or stock, except for money, labor done or money or property actually received, and all fictitious increase of stock or indebtedness in any form shall be void."

Now, if the capital stock of a corporation, sold by its stockholders to. it and for which the company gives to the vendors its bond and mortgage, is not property within the meaning of the Constitution and laws of Pennsylvania, it follows as a corollary that there has been a fictitious increase of debt. Neither the appellate nor the lower courts of Pennsylvania have decided this question, and it remains for this court to place its own construction upon the constitutional mandate. The prohibition extends to all classes of corporations. Cheetham v. McCormick, 178 Pa. 190, 35 Atl. 631. It seems that an asset of some kind, valuable from the standpoint of availability to creditors, should have passed to the corporation for its bond and mortgage. Surely the corporation did not receive anything it did not already have, so far as ability to pay its debts was concerned. If such a transaction as the one in hand is upheld as to a portion of its stock, why would it not hold good as to the whole amount? Surely the law would not tolerate such a transfer. The bankrupt not only failed to obtain any property for the bond and mortgage, but the corporate debts were increased $15,000, and, by virtue of the recorded mortgage, property to this amount was attempted to be placed beyond the reach of creditors. Neither corporation nor creditors benefited by virtue of this transaction, but the real beneficiaries, if permitted, would be the dissatisfied stockholders. The bond and mortgage is nothing but a contract by which the bankrupt agreed to repay to the several contributors of its capital stock their several contributions, whereby such contributions were converted into corporate debts. This doubtless is not valid even so far as it concerns the corporation, much less as against the trustee in bankruptcy who here stands for creditors of the corporation. Guarantee T. & T. Co. v. Dilworth Coal Co., 235 Pa. 601, 84 Atl. 516. I do not believe that the vendors were actuated with any fraudulent intent, but it matters little what their intentions were; they gave nothing to the corporation which could be termed property that would enlarge its assets, and for this reason it follows that the debt created is fictitious and the security given void.

[3] There is yet another reason, not raised by the parties, which is a complete bar to the defendants' right to the fund being litigated. Under the law of Pennsylvania, and that is the law of this case, capital stock of a corporation is a trust fund for the payment of company debts. 1 Eastman, Private Corp. (2d Ed.) § 552, page 510, section 239, pp. 236, 237, and cases cited. However much this doctrine may

have been qualified by the courts of other states, or by the federal courts, the principle has never been questioned in Pennsylvania.

[4] Within less than one year after the giving of the bond and mortgage the corporation was adjudicated a bankrupt, then owing $13,-127.53 to unsecured creditors, most of whom, if not all, were such at the time of the execution and delivery thereof. The sum now being litigated under the particular circumstances of the case represents capital stock, and as such must be regarded as assets for the payment of these debts. This is true especially looking at it from the viewpoint of the claimant Coleman, trustee. The only consideration he has to offer for his bond and mortgage on which he relies to recover here is his money paid for the stock subscribed by him and the other cestui que trustents. If this amount had by any circumstances been received by the mortgagee, or the other defendants, under the authority of Stang's Appeal, 10 Wkly. Notes Cas. (Supreme Court of Pennsylvania) 409, they would have received it impressed with a trust for the creditors, which a court of equity would enforce. In the syllabus of the case it is said:

"The capital of a corporation is a trust fund for the payment of its creditors; stockholders who diminish that fund by distribution among themselves, without first providing for the payment of all indebtedness, receive it impressed with the trust, which a court of equity will enforce."

Since the capital stock of a corporation is a trust fund for the payment of its debts, the use of this fund in the purchase of its own shares, in itself, is destructive of a security intended primarily for the creditors, and a plain misappropriation of it. If the corporation was permitted to so use the trust fund, it might in this way distribute its capital among its stockholders, extinguish their personal liability, and leave its creditors without security or remedy. Columbia Bank's Estate, 147 Pa. 436, 23 Atl. 625, 626, 628. The bond and mortgage were given in exchange for the company's own stock in the hands of Coleman, trustee. Thus far, the transaction amounted to nothing more than an agreement by the company to redeem the stock, for, until the mortgage was paid, the capital stock surrendered was not paid for. The defendants' position therefore, at this time, amounts to an attempt to seize, through legal process, the capital stock fund represented by the trustee's holders, to the loss of the creditors of the company, who were such creditors at the consummation of the agreement pretending to stamp the transaction with authority, and this, at a time when the company is in the course of settlement in bankruptcy. If, under the authority cited, a court of equity would require these defendants to bring back this fund had they received it, a fortiori, the court must now award the fund to the trustee in bankruptcy.