## BINGAMAN et al. v. COMMONWEALTH TRUST CO. et al.

(District Court, M. D. Pennsylvania. September 21, 1926.)

No. 457.

**1. Bankruptcy ☞299.**

Trustee alone is authorized to maintain a suit to avoid mortgage bonds of the bankrupt, and joinder of creditor with him is misjoinder.

**2. Bankruptcy ☞185.**

An unsecured general creditor cannot maintain a suit to set aside a transfer of property by bankrupt without consideration.

**3. Bankruptcy ☞181, 185—Transfer of bonds without consideration by bankrupt Pennsylvania corporation was void, and may be attacked by subsequent creditors or its trustee in bankruptcy (Const. Pa. art. 16, § 7; Pa. St. 1920, § 5649; Bankruptcy Act, § 70e [U. S. Comp. St. § 9654]).**

A transfer of its bonds by bankrupt corporation without consideration, was void under Const. Pa. art. 16, § 7, and Act Pa. April 17, 1876, § 4 (P. L. 32; Pa. St. 1920, § 5649), and may be attacked by subsequent creditors or on their behalf by the trustee in bankruptcy under Bankruptcy Act, § 70e (U. S. Comp. St. § 9654).

**4. Bankruptcy ☞298—Bill by trustee in bankruptcy held not subject to dismissal for laches, where position of defendants had not changed.**

Bill of trustee for cancellation of bonds of bankrupt corporation alleged to have been issued without consideration *held* not subject to dismissal for laches because of delay in bringing suit, where the bonds were still held by the persons to whom issued or their estates.

In Equity. Suit by Howard M. Bingaman, trustee in bankruptcy of the Harrisburg Foundry & Machine Works, and another, against the Commonwealth Trust Company and others. On motion to dismiss bill.

Denied, with leave to complainant trustee to amend.

Daniel H. Kunkel, John F. Sweeney, Paul G. Smith, John R. Geyer, all of Harrisburg, Pa., for plaintiffs.

Spencer G. Nauman, M. W. Jacobs, C. H. Bergner, all of Harrisburg, Pa., for defendants.

JOHNSON, District Judge. On December 9, 1924, the plaintiffs filed their bill of complaint against the defendants to avoid certain bonds alleged to have been issued without consideration by the bankrupt corporation, in violation of section 7 of article 16 of the Constitution of Pennsylvania, and of section 4 of the Act of Assembly of Pennsylvania of April 17, 1876 (P. L. 32; Pa. St. 1920, § 5649); and also to secure the return of interest paid upon said bonds.

The bill avers, in substance, that the Harrisburg Foundry & Machine Works, on July 1, 1918, executed a mortgage or deed of trust to the Commonwealth Trust Company of Harrisburg, Pa., trustee, to secure an issue of $600,000 par value of first, and refunding 6 per cent. gold bonds, and that on December 31, 1918, $100,000 par value of these bonds were issued to William Jennings, trustee of a certain syndicate, therein named, who distributed them among the members of the syndicate in proportion to their respective interests. This syndicate was formed prior to November 23, 1915, for the purpose of manufacturing war materials at the plant of the company, the Harrisburg Foundry & Machine Works. On November 23, 1915, an agreement was entered into between the company and the syndicate in which the syndicate agreed and undertook to place the necessary machinery and equipment for the manufacture of war materials in the plant of the company, which were to remain the property of the syndicate, and in which agreement all moneys received on account of a certain contract between the company and the J. G. Brill Company, for the manufacture of 30,000 shells, at $6.25 per shell, which was executed on the same day, and was part of the same transaction, were to be paid to William Jennings, trustee of the syndicate, who was to distribute the money derived therefrom as follows: To the company, $1.45 for each shell, and to the members of the syndicate in proportion to their respective contributions thereto, $4.80 per shell. The syndicate was also to continue interested in all subsequent orders of like character for a period of five years.

The work under this contract undertaken by the syndicate was unsuccessful, and resulted in a loss both to the syndicate and the company, and the work was abandoned, and the machinery and equipment were sold by the trustee of the syndicate, and the proceeds distributed among the members of the syndicate.

Although no obligation was imposed upon the company to assume any liability and loss resulting to the syndicate, nevertheless the company issued $100,000 of its bonds to the trustee of the syndicate, without consideration, in an attempt to permit the syndicate members to recoup losses sustained by them in the enterprise for which no liability rested upon the company.

When the bonds were issued and delivered by the company to the syndicate, through its trustee, the members of the syndicate, by stock ownership control of the members of the board of directors of the company, dominated and controlled the management and affairs of the company so as to induce such corporate action as the syndicate required to carry into effect its plan of securing the $100,-000 of bonds for the use of the members of the syndicate.

The defendants in the bill are the Commonwealth Trust Company, trustee under the mortgage, William Jennings, trustee of the syndicate, and all of the present holders of the bonds.

The defendants, with the exception of Alfred Sohland and Dora Sohland, have filed a motion to dismiss the bill of complaint, and have assigned eight reasons in support thereof, which will be considered in their order:

[1] "(1) For the reason that Howard M. Bingaman, trustee in bankruptcy of the Harrisburg Foundry & Machine Works, and the Peddicord Sons Transfer Company, a Maryland corporation, are joined as parties plaintiff, there being no authority for law for such joinder."

The trustee alone has the right to maintain an action of this kind. The creditors appoint or elect the trustee, and he represents all of the creditors, and it is improper to join with him in an action of this kind one of the creditors.

In Glenny v. Langdon, 98 U. S. 20, at page 24 (25 L. Ed. 43), Mr. Justice Clifford, delivering the opinion of the court, said: "Power and authority are also vested in the assignee by virtue of the bankruptcy, and his appointment to manage, dispose of, sue for, and recover all his property or estate, real or personal, debts or effects, and to defend all suits at law or in equity pending against the bankrupt. 14 Stat. 525. Congress, in framing the Bankrupt Act, it is believed, intended to provide instrumentalities for its complete execution, and such as are sufficient to carry it into full effect."

And in Re Schrom (D. C.) 97 F. 760, District Judge Shiras said: "The proper course to pursue is for the petitioning creditors to take proceedings in the proper court, state or federal, in Illinois, in their own name, setting up the proceedings now pending in bankruptcy in this court as the basis of their action, and asking that court to protect the rights of creditors in the property situated in Illinois, either by the appointment of a receiver, by injunction, or any other appropriate remedy. If the adjudication in bankruptcy is had, then the trustee who will be appointed can then appear in that case on behalf of creditors, and take control of the proceedings."

Where the receiver of an internal improvement fund, who was appointed by the court, filed a bill in equity to determine upon what amount of certain bonds the purchaser was bound to make semiannual payment, it was held that the holders of the bonds were not proper parties complainant. Doggett v. Railroad Co., 99 U. S. 72, 25 L. Ed. 301. In this case it was said by Mr. Justice Swayne, delivering the opinion of the court: "We have no doubt as to the merits of the bill. We think the objection of misjoinder was also well taken. The case was purely ancillary in its character. The receiver represented the court which appointed him and the trustees of the internal improvement fund. Vose and Wagner claimed to own a part of the outstanding bonds. But that gave them no standing place in the litigation. As well might every other holder of any of the bonds, however small the amount, or how numerous such holders might be, have been made co-complainants with the receiver, as Vose and Wagner. The presence of the latter as such parties was unwarranted, and if permitted, and the suit had gone on, would have incumbered the record unnecessarily and have led to confusion."

The same principle is laid down in Southern Express Co. v. Railroad Co., 99 U. S. 191, where, on page 199 (25 L. Ed. 319), Mr. Justice Swayne, delivering the opinion of the court, said: "No party defendant was necessary but the receiver. He was in possession of the property and effects of the railroad company, subject to the order of the court, and could have specifically performed the contract, or paid back the money loaned if the court had so directed. The presence of the

other parties was immaterial, and the bill might well have been dismissed as to them."

In Trimble v. Woodhead, 102 U. S. 647, 26 L. Ed. 290, it was said by Mr. Justice Miller: "Nor is the creditor of a bankrupt without remedy in such a case as the present. If he is aware of the existence of property or credits, which should rightfully go to the assignee for the benefit of creditors, he should inform the assignee of all he knows on the subject, and request him to proceed, by suit if necessary, to recover it. If he declines, a petition to the court of original jurisdiction would, if a proper case was made, compel the assignee to proceed. Glenny v. Langdon [98 U. S. 20, 25 L. Ed. 43], supra. Indeed, the whole question is so fully considered in that case that little more need be said."

[2] "(2) For the reason that it appears by the bill of complaint that the Peddicord Sons Transfer Company is an unsecured creditor of the Harrisburg Foundry & Machine Works, and hence has no standing to maintain this suit."

According to the bill, the Peddicord Sons Transfer Company is a simple contract creditor, and a simple contract creditor cannot maintain a bill to set aside a transfer of property by his debtor.

In Viquesney et al. v. Allen, 131 F. 21, 65 C. C. A. 259, it was held that a simple contract creditor cannot maintain a bill in equity to set aside fraudulent conveyances of his debtor's property, and to have the same administered by a receiver. District Judge McDowell, who delivered the opinion in this case, said: "In Cates v. Allen, 149 U. S. 451, 13 S. Ct. 883, 37 L. Ed. 804, the facts were essentially the same as in the case at bar. Simple contract creditors filed a bill in equity in the federal court, alleging a fraudulent assignment by the debtor; praying for an injunction, for the appointment of a receiver, and that the assigned property be subjected to complainants' debts. The court said, at page 457, 149 U. S., and page 884, 13 S. Ct., 37 L. Ed. 804:

" 'The principle that a general creditor cannot assail, as fraudulent against creditors, an assignment or transfer of property made by his debtor, until the creditor has first established his debt by the judgment of a court of competent jurisdiction, and has either acquired a lien upon the property, or is in a situation to perfect a lien thereon and subject it to the payment of his judgment, upon the removal of the obstacle presented by the fraudulent assignment or transfer, is elementary. Waite on Fraud. Con. § 73, and cases cited. The existence of judgment, or of judg-

ment and execution, is necessary, first, as adjudicating and definitely establishing the legal demand; and, second, as exhausting the legal remedy.'

"In Hollins v. Brierfield Co., 150 U. S. 371, 378, 14 S. Ct. 127, 130, 37 L. Ed. 1113, it is said:

" 'The plaintiffs were simple contract creditors of the company. Their claims had not been reduced to judgment, and they had no express lien upon mortgage, trust deed, or otherwise. It is the settled law of this court that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims.' "

In Cates v. Allen, 149 U. S. 451, on page 457, 13 S. Ct. 883, 884 (37 L. Ed. 804), Mr. Justice Fuller, delivering the opinion of the court, said: "The principle that a general creditor cannot assail as fraudulent against creditors, an assignment or transfer of property made by his debtor until the creditor has first established his debt by the judgment of a court of competent jurisdiction, and has either acquired a lien upon the property, or is in a situation to perfect a lien thereon and subject it to the payment of his judgment, upon the removal of the obstacle presented by the fraudulent assignment or transfer, is elementary. Waite on Fraud. Con. § 73, and cases cited. The existence of judgment, or of judgment and execution, is necessary, first, as adjudicating and definitely establishing the legal demand, and, second, as exhausting the legal remedy."

"(3) For the reason that it does not appear by the bill of complaint that the Peddicord Sons Transfer Company was a creditor of the Harrisburg Foundry & Machine Works at the time of the execution and delivery of the mortgage and the transfer of the bonds complained of in the bill of complaint, and therefore has no standing to maintain this suit."

The Peddicord Sons Transfer Company, a simple contract creditor, as shown above, has no standing to maintain this suit, for the reason that the trustee alone has the right to maintain the suit, and for the further reason that the company is a simple contract creditor, without having reduced its claim to a judgment. The reason assigned here that it does not appear in the bill that the company was a creditor of the Harrisburg Foundry & Machine Works at the time of the execution and delivery of the mortgage and the transfer of the bonds is not sound, and this question, which is the most important one raised in the motion to dismiss plaintiffs' bill of com-

plaint, will be considered under the fourth, fifth, and sixth reasons for dismissal of the bill.

The Peddicord Sons Transfer Company should not have been joined as a party plaintiff in this bill, but the bill may be amended by striking out this party plaintiff.

[3] The fourth, fifth, and sixth reasons raise substantially the same question, and will be considered together.

"(4) For the reason that the bill of complaint fails to show that there are now any creditors of Harrisburg Foundry & Machine Works who were creditors at the time of the issue of the bonds referred to in the bill.

"(5) For the reason that a trustee in bankruptcy has authority to maintain a bill only where a creditor or creditors would have authority to maintain a bill, if there had been no bankruptcy proceedings, and the bill fails to show that there is a creditor or creditors who have a standing to maintain a bill of complaint in case there had been no bankruptcy.

"(6) For the reason that a trustee in bankruptcy is without authority in law to maintain a bill for the surrender and cancellation of bonds alleged to have been issued in violation of the provisions of section 7, art. 16, of the Constitution of Pennsylvania, and of the Act of Assembly of said commonwealth of April 17, 1876 (P. L. 30)."

The fourth, fifth, and sixth reasons raise the question that the validity of the bond issue cannot be questioned by one who was not a creditor of the corporation at the time of the execution and delivery of the mortgage and the transfer of the bonds in question, and that, since there is no averment in the bill of any such creditors, the trustee has no standing to avoid the issue and transfer of the bonds.

"The Bankruptcy Act provides that 'the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred,' and the effect of this provision is to give the trustee the same rights with respect to such transfers as are conferred on the bankrupt's creditors, or any of them, by the common law or the statutory law of the state where the property is located, but no other or further rights." 7 Corpus Juris, 183, § 284.

"The trustee in bankruptcy has power to represent the general creditors of the bankrupt in resisting claims that, were the creditors permitted to resist them, would be invalid under the statute of the state. In re Bement, 172 F. 98, 96 C. C. A. 412." 7 Corpus Juris, 183, note (d).

"And has plenary power to take all necessary steps to subject the bankrupt's property to the satisfaction of his debts. Benner v. Scandinavian American Bank, 73 Wash. 488, 131 P. 1149, Ann. Cas. 1914D, 702; Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405; Bryan v. Bernheimer, 181 U. S. 188, 21 S. Ct. 557, 45 L. Ed. 814." 7 Corpus Juris, 183, note (i).

And, therefore, "the trustee may contest the validity of a mortgage covering the bankrupt's real and personal property. Pacific State Bank v. Coats, 205 F. 618, 123 C. C. A. 634, Ann. Cas. 1913E, 846." 7 Corpus Juris, 183, note (j).

From the foregoing authorities it is evident, therefore, under section 70, subdivision e, of the Bankruptcy Act (Comp. St. § 9654), that, if the creditors of the Harrisburg Foundry & Machine Works, who were such at the time of the filing of the petition in bankruptcy, though they were not such at the time of the issuance of the mortgage in question in 1918, might, under the law in Pennsylvania, have set aside the issue of bonds had there been no bankruptcy, then the trustee, as representative of the creditors, has authority to maintain this action.

The question then arises, Could subsequent creditors, under the laws of Pennsylvania, have maintained a bill to avoid the bond issue in question?

Under article 16, § 7, of the Constitution of Pennsylvania, which provides that "no corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and indebtedness of corporations shall not be increased except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock, first obtained at a meeting to be held after sixty days' notice given in pursuance of law," and under the Pennsylvania Act of April 17, 1876 (P. L. 32), § 4, enacted to carry the above constitutional provision into effect, "no such corporation shall issue either bonds or stock except for money, labor done or money or property actually received, and all fictitious increase of stock or indebtedness in any form shall be void" and by a number of controlling decisions, this question is answered in the affirmative.

In Guarantee Title & Trust Co. v. Dilworth Coal Co., 235 Pa. 594, 84 A. 516, it was held: "Where a corporation issues $156,000 of bonds and $156,000 of stock in payment

for real estate worth only $156,000, and thereafter issues $144,000 of bonds and $144,000 of stock, for which bonds and stock it receives only $144,000 in cash, so that for its whole bond and stock issue of $600,000 it has received only $300,000 in property and cash, its whole bond issue may be void in the hands of those who originally received the bonds; and if, on a scire facias on the mortgage given to secure the bonds, it appears that all of the bonds are in the hands of the original holders, the validity of the issue of the bonds is a question that must be submitted to the jury."

In the above case, on page 599 (84 A. 517), it was said by Mr. Justice Brown, delivering the opinion of the court: " 'No corporation shall issue stock or bonds except for money, labor done, or money or property actually received.' Const. art. 16, § 7. What the organizers of the Dilworth Coal Company did was done in the face of this provision, but the jury were not permitted to pass upon the validity of the bonds issued to the subscribers to the capital stock of the company, even though they were still in the hands of the original holders. The question of the rights of innocent holders does not arise in this controversy, and there is no merit in the contention of the appellee that the validity of the bonds cannot be questioned because the bondholders did not have their day in court. The holders of the bonds who gave the notice to the trustees to proceed on the mortgage were those to whom $107,000 of the bonds had been issued under the agreement giving them $1,000 in stock and $1,000 in a bond for each $1,000 subscribed, and their holdings were unchanged from the time they received them. They cannot, therefore, be said to have been denied their day in court, for they themselves caused this proceeding to be instituted. H. P. Dilworth testified that he was still the owner of the $81,000 of bonds originally issued to him, and had acquired the $78,000 originally issued to his brother George. E. M. O'Neil, who had received $10,000 of the bonds, was represented on the trial by his general agent, who testified that he still held the bonds. It thus appeared that original holders of $276,000 of the bonds had notice of this proceeding. Of the remaining bonds it was testified that C. B. McLean was still the owner of the $20,000 of bonds originally issued to him, and an unchallenged statement of counsel for appellant is that James Black, an original subscriber to $4,000 of the bonds, which he still held, was present at the trial. All the original holders of the bonds, with the possible exception of C. B. McLean, seem to have had notice of this proceeding, and there was ample evidence to justify the jury in finding that the entire issue was void.

"If it had affirmatively appeared that cash or property to the value of $600,000 had actually been turned over to the coal company, a different situation would be presented; but, from what appeared on the trial, the conclusion seems to be unavoidable that all the company got was property and money amounting in value to but $300,000, and that all the parties to the scheme of organization understood this. Of a situation very similar to the one before us, Mr. Justice Lurton, now of the Supreme Court of the United States, aptly said: 'Whether this "basis of organization" be construed to be a contract whereby each subscriber to the stock was to be given a bond as a bonus, or each subscriber to the bonds was to be given paid-up stock as a bonus, or as an agreement by which each contributor to the capital stock was to receive the obligation of the company, secured by a primary mortgage, that he should be repaid the amount of his subscription, with interest, such an agreement would clearly be illegal and ineffective as to existing or subsequent creditors of the corporation, upon the ground that the payment for the stock was unreal and simulated, or that the bond had been issued upon no consideration. 2 Morawetz, Priv. Corp. Sec. 824; Sawyer v. Hoag, 84 U. S. (17 Wall.) 610 [21 L. Ed. 731]; Scovill v. Thayer, 105 U. S. 143 [26 L. Ed. 968]. * * * It was an arrangement whereby the franchise was to be secured, and at the same time deprive the public of the security which by law they are entitled to have, and upon which the grant of the franchise depends. Whatever the real motive and purpose of the promoters of this arrangement may have been, its legal effect, if valid, would have been to throw all the risks and hazards of the business upon the public who should deal with it; while the contributors were to reap all possible gains, and should be secured against loss in the event the enterprise prove unprofitable. Is a contract by which a corporation agrees to repay to the contributors of its capital stock their several contributions, and whereby such contributions are converted into corporate debts, valid even as against the corporation? Upon what consideration does such an agreement rest? And what power has a corporation to bind itself by such a contract?' Morrow v. Nashville Iron, Steel & Charcoal Co. [87 Tenn. 262, 10 S. W. 495] 3 L. R. A. 37 [10 Am. St. Rep. 658]."

In Big Spring Electric Co. v. Kitzmiller et al., 268 Pa. 34, 110 A. 783, it was held: "Under article 16, § 7, of the Constitution of

1874, and the Act of April 17, 1876 (P. L. 32), which provide that no corporation shall issue bonds except for money or property actually received, a sale and purchase of bonds must be bona fide, and not a mere device to evade the law, and to impose upon the corporation a greater obligation than there is occasion for it to assume."

In the above case Mr. Justice Frazer, delivering the opinion of the court, on page 38 (110 A. 784) said: "The first question for consideration is whether the transaction was void within the meaning of article 16, § 7, of the Constitution of Pennsylvania, and the Act of April 17, 1876 (P. L. 32), which provide that no corporation shall issue stock or bonds except for money or property actually received and that all fictitious increase of stock or indebtedness shall be void. The trial judge left to the jury the question whether the value of the land was a fair equivalent for the bonds, and correctly charged that if there was a fictitious increase of the indebtedness there would be due from defendants to plaintiff the difference between the fair value of the land at the time of conveyance and the par value of the bonds; but, if the value of the land approximately conformed to the amount of bonds issued for the property, they should find for defendants. The record contains ample evidence to support the conclusion of the jury that the value placed on the land was a fictitious one. The constitutional and statutory provisions referred to were designed to prevent unscrupulous persons from fraudulently issuing and placing on the market bonds or stock not fairly representing money or property received by the corporation: Memphis, etc., R. R. v. Dow, 120 U. S. 287 [7 S. Ct. 482, 30 L. Ed. 595]; Guarantee Title & Trust Co. v. Dilworth Coal Co., 235 Pa. 594 [84 A. 516]. In purchasing property for corporate purposes, the transaction must be bone fide, and not a mere device to evade the law and to impose upon the corporation a greater obligation than there is occasion for it to assume. There was in the present case such a disproportion between the value of the property and amount paid as consideration for it as to require the jury to pass on the question whether the transaction was bona fide or a mere device to evade the law."

In Breckons v. Snyder, 211 Pa. 176, 60 A. 575, it was held: "In an action by the trustee of a bankrupt to recover money alleged to have been paid by the bankrupt, prior to the bankruptcy of the defendant, in satisfaction of a debt, where the question at issue is not whether there was a preferential transfer within the time prohibited by law, but whether a debt had existed and had been paid, it is not necessary for the plaintiff to show that there were unsatisfied creditors at the time of the transfer, at the time the suit was brought, and at the time of the trial."

In Commonwealth ex rel. v. Reading Traction Co., 204 Pa. 151 on page 153, 53 A. 755, the court said: "The act of 1867 was framed with care and passed for the purpose as declared in its title of enforcing the provisions of section 7 of article 16 of the Constitution. In a proper case and between proper parties it would be enforced rigidly and the stock declared void."

In Re Wyoming Valley Ice Co. (D. C.) 153 F. 787 on page 794, District Judge Archbald said: "The bonds of the company being void by the Constitution, the right of the excepting creditors to question them cannot be doubted. Not, of course, in the hands of innocent purchasers for value. Commonwealth v. Reading Traction Co., 204 Pa. 151, 53 A. 755. But that is not the situation here; both bonds and stocks, so far as is shown, being held by the parties who participated in their issue. Nor, as already intimated, can it be said that the exceptants came in after the bonded indebtedness of the company had been contracted, and so are not in a position to question it, being affected by conditions as so established, if that is material. The judgment of the Bear Creek Ice Company, if not that of the Albert Lewis Lumber Company, is for ice which was delivered in accordance with the agreement made by Dr. Young and adopted by the company to take a certain yearly quantity; the agreement with the company being executed March 16, 1901, the day the bond issue was voted by the directors, but before it had been finally authorized by the stockholders. The obligation, therefore, which is the basis of the indebtedness to the excepting creditors, anticipates the bonds, and is not to be postponed to them upon any supposed idea of their priority. But, aside from this, having regard to the conditions which obtain here, the rights of creditors are superior whether existing or subsequent. The bonds are mere promises to pay, and in the hands of the present holders are no more at best than voluntary obligations which cannot be enforced as against the claims of those to whom the company is actually indebted. The gift of a note or bond by the maker is not executed except by payment. Kern's Estate, 171 Pa. 55, 33 A. 129. And, as to all over and above the value contributed for them, the bonds of the company were a gift here."

In Tepel v. Coleman et al. (D. C.) 229 F. 300, it was held: "Under Const. Pa. art. 16,

§ 7, and Act Pa. April 17, 1876 (P. L. 32) § 4, prohibiting corporations from issuing stock or bonds except for money, labor done, or money or property actually received, and providing that all fictitious increases of stock or indebtedness shall be void, where a corporation purchased its own stock and issued a bond secured by a mortgage in payment thereof, the bond and mortgage were void, as the stock of the corporation was not 'property' that would enlarge the assets of the corporation and be available for creditors, and the debt created was therefore fictitious."

On appeal of the above case to the Circuit Court of Appeals for the Third Circuit (Coleman et al. v. Tepel, 230 F. 63 on page 70, 144 C. C. A. 361, 368), Circuit Judge Woolley said: "It has been urged that if the transaction is void it is void only as to existing creditors and not as to those with whom the corporation subsequently incurred obligations, upon the ground, that to avoid a transfer of property in fraud of future creditors, there must be present actual intent to defraud. Sommermeyr [Sommermeyer] v. Schwartz, 89 Wis. 66, 71, 61 N. W. 311; Case v. Phelps, 39 N. Y. 164. With this principle evidently in mind, there was controversy at the trial as to whether certain debts were created prior or subsequent to the stock purchase. Unquestionably many debts created prior to the transaction were proved in bankruptcy. Others were subsequently incurred. We are inclined to hold, upon the reasoning of well-considered authorities, that the void character of such a transaction as to future creditors does not depend upon fraudulent intent, and that when a stockholder, with the knowledge he has or with that with which he is charged concerning the financial condition of the corporation, engages in a transaction which results in a depletion for his advantage of corporate assets below the subscribed capital or below existing liabilities, as the law may be, and becomes a party to the solvent appearance of a business that is intended to be continued, he is bound by his act both to existing and future creditors, when its direct object or immediate consequence is the insolvency of the corporation and injury to creditors. A. & W. B. & C. A. v. Smith [141 Wis. 377, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42], supra; Maryland Trust Co. v. National Bank [102 Md. 608, 63 A. 70], supra; Hamor v. Taylor-Rice E. Co. [(C. C.) 84 F. 392], supra."

That a transfer of property of a corporation to persons in whose hands the property is still held may be attacked by future creditors is sustained by the following authorities:

Williamson v. Collins et al., 243 F. 835, 156 C. C. A. 347; In re Lukens (D. C.) 138 F. 188; In re Waterloo Organ Co., 134 F. 341, 67 C. C. A. 255; Shedden v. Sylvester, 88 Wash. 348, 153 P. 1; Payne v. White Swan Auto Co., 126 Wash. 550, 219 P. 32; Central Trust Co. v. Columbus H. V. & T. Ry. Co. (C. C.) 87 F. 815; Baldwin v. Kingston (D. C.) 247 F. 163; Bank of North America v. Penn Motor Car Co., 235 Pa. 194, 83 A. 622.

From the above authorities this court concludes that the transfer of the bonds in question, without consideration, was void, and may be attacked by subsequent creditors, and therefore the plaintiffs' bill is not deficient in failing to aver that the creditors existed at the time of the issue of the bonds.

[4] "(7). For the reason that the plaintiff trustee in bankruptcy and the creditors he claims to represent have been guilty of such laches as to bar him from equitable or any relief, especially as the bill of complaint fails specifically to set forth what, since December 31, 1918, the date when the bonds were alleged to have been issued, were the impediments to an earlier presentation of the claim, how the plaintiff and the creditors he represents came to be so long ignorant of their right, and the means used by the defendants, or any of them, to keep the plaintiff and the creditors he represents so long in ignorance, during which time the situation of the defendants has been materially changed by the deaths of James Brady, Spencer C. Gilbert, Charles A. Kunkel, Samuel Kunkel, and Lane S. Hart, who are named in the bill as persons receiving some of the bonds referred to and the estates of three of whom are made parties defendant."

The bonds have not passed into the hands of innocent holders for value, but are held by either the original donees or by the estates of deceased donees. On this motion it must be assumed that the bonds were issued without consideration. Therefore the position of the defendants has not been changed to their damage by anything done or permitted by the plaintiffs, nor does it appear from the plaintiffs' bill that the plaintiffs were guilty of such delay as to warrant the court at this time in declaring the plaintiff guilty of laches. The plaintiff, however, should amend his bill, setting forth in it the reasons for any delay in bringing this suit.

"(8) The said bill of complaint is otherwise without equity, and does not set forth facts which entitle the plaintiffs, or either of them, to the relief prayed for or any thereof." This reason is without merit, and must be dismissed.

The defendants contend in their brief of argument that the plaintiffs' bill is deficient in not averring that the creditors will suffer on account of the transfer of the bonds in question. As this question is not legally raised, we will not decide it here, but we suggest that the plaintiffs amend their bill so as to contain such averment.

And now, September 21, 1926, the first, second, and third reasons for dismissing plaintiffs' bill of complaint are sustained, and the fourth, fifth, sixth, seventh, and eighth reasons are dismissed, and the motion to dismiss plaintiffs' bill of complaint is overruled, and the plaintiffs are allowed 30 days from the date of the filing of this opinion to amend their bill in accordance with this opinion.